No. 12,516.

CALDWELL ET AL. *v.* BOYD.

WILL.—*Trust.—Advancement by Trustee.—Assignment of Income by Benefi-- ciary.*—Where a testator sets apart a fund to be held in trust for the use of a son, the interest to be paid to him semi-annually during life, and at his death the principal to go to his heirs, an assignment to the trustee by the beneficiary of future income to secure an advancement of money, is valid in the absence of fraud and of any testamentary or statutory restriction of the power of alienation.

SAME.—*Fraud.—Loan by Trustee to Son.*—It is not a fraud *per se* for a trustee to loan a part of the trust fund to his son, if the loan is well secured.

Caldwell *et al. v.* Boyd.

SPECIAL FINDING.—*Fraud.*—Fraud is a question of fact, and in a special finding in a case where it is in issue, the fact itself must be found, and not the evidence of fraud.

From the Henry Circuit Court.

*J. Brown, W. A. Brown, J. M. Brown, R. Warner, C. E. Barrett, C. A. Ray, F. Knefler* and *J. S. Berryhill,* for appellants.

*D. Turpie, J. C. Denny, I. L. Bloomer, J. H. Mellett, E. H. Bundy, T. B. Redding* and *W. Grose,* for appellee.

HOWK, J.—In this cause, errors are assigned here by appellants, the defendants below, which call in question (1) the correctness of the court's conclusions of law upon its special finding of facts, and (2) the overruling of their motion for a new trial.

After the cause was put at issue, it was tried by the court; and at the request of all the parties, the court made a special finding of the facts, and thereon stated its conclusions of law. The facts found by the court were substantially as follows:

1. One Eli Davis by his last will, which was probated in the year 1871, directed that $20,000 be set apart and held by his administrator, or such trustee or trustees as might be appointed by the court having probate jurisdiction, to be held in trust under the direction and supervision of such court, for the use of his son, Clinton Davis, during his natural life; the interest thereon to be paid semi-annually to said Clinton Davis until his death, the principal then to go to his heirs. (A copy of such will is then set out, which we omit.)

2. The defendant Caldwell was by the proper court duly appointed trustee to receive and manage said fund. He accepted such appointment and qualified as such trustee, on the 24th day of July, 1872. On the 30th day of April, 1873, he filed in the Henry Circuit Court an inventory of the assets of said trust fund, charging himself with $20,000 of principal and $555.81 interest received by him to that date.

He made other reports to the court, from time to time, all of which were examined and approved.

3. On the 6th day of October, 1875, he filed in said court his written resignation of said trust, and the court appointed one Martin L. Bundy as his successor. On the 26th day of January, 1876, he filed in said court his final settlement report and a receipt from his successor, Bundy, for the residue of the trust fund remaining in his hands, which report was approved by the court, and he was finally discharged. Subsequently thereto and before the bringing of this suit, said Bundy resigned, and the plaintiff in this action was appointed to succeed him.

4. Among the assets turned over by the defendant Caldwell to his successor, Bundy, were three notes for $1,200 each, executed to him as such trustee by one Lewis V. Caldwell, on the 20th day of July, 1875, payable respectively in one, two and three years from date, with interest at the rate of ten per cent. per annum, on which the interest had been paid to July 20th, 1877. These notes were all secured by a mortgage on a certain eighty acre tract of land in Rush county, Indiana. The facts in relation to said loan and said mortgage are as follows: On said 20th day of July, 1875, the defendant Caldwell, being the owner of said mortgaged land, conveyed the same to said Lewis V. Caldwell, who was his son, for the agreed price of $5,200. The defendant retained the $3,600 evidenced by his son's notes and secured by mortgage on the land so conveyed, but by what arrangement or upon what kind of an agreement, does not appear. Default having been made in the payment of such three notes, suit was instituted thereon, and for the foreclosure of such mortgage, by Bundy as trustee, against Lewis V. Caldwell and his wife, and the defendant Caldwell, in the Rush Circuit Court; and such proceedings were had in such suit that, on March 5th, 1878, the court rendered judgment therein, in favor of such trustee, for $3,820, the amount found due on

such three notes, and decreed the foreclosure of such mortgage and the sale of the mortgaged land, and appointed a receiver to collect the rents of such land and apply the same to the payment of the mortgage debt.

Afterwards, Lewis V. Caldwell having died intestate, on a complaint filed for that purpose against the widow and heirs at law of such decedent, the Rush Circuit Court, on the 4th day of June, 1879, revived such judgment and decree against them, and found there was then due thereon the sum of $4,161. Under an order of sale issued on such revived judgment and decree, the lands described therein were sold by the sheriff of Rush county according to law, on the 2d day of August, 1879, at which sale appellee, Boyd, trustee for said fund, became the purchaser for the sum of $3,800, out of which sum, after the payment of the costs, there was credited on such judgment and decree $3,670.60, leaving a balance of $525 yet due on such judgment and decree and wholly unpaid.

5. After appellee, as trustee for such fund, had received a deed from the sheriff of Rush county for the land so purchased, he sold such land under an order of the proper court, on the 15th day of April, 1881, to one Joseph Carter for the sum of $4,000. Such sale was made at an expense of $65 to the fund, but the trustee had in the meantime received $76.50 from timber sold, and $175 from rent of the land. At the time of the foreclosure sale of such land, it was worth $4,500.

6. Among the assets turned over by appellant Caldwell, at the time of making his final settlement report, to his successor in the trust, was an open account against the beneficiary, Clinton Davis, for the sum of $1,618.79, for which sum he received credit on making his final settlement. The sum originally owing to the appellant Caldwell, from the beneficiary in the trust fund, was $1,978 as shown by a written agreement between them made on the 22d day of July, 1874, in the words and figures following: (Here a copy of

Caldwell *et al. v.* Boyd.

such agreement is set out, which we omit, but give a summary of all that is material therein.) The agreement contained an itemized statement of the moneys paid by Caldwell to or for the beneficiary, and of the debts of the latter assumed by the former, amounting in the aggregate to said sum of $1,978. It is then stated therein, that Clinton Davis had, on that day, assigned to Caldwell, as collateral security for the repayment of such moneys and debts, a policy of insurance on his life, in the Franklin Life Insurance Company of Indianapolis, for $2,500, and that the annual premiums due thereon were to be paid by Caldwell out of the interest in his hands belonging to said Davis. The agreement then proceeds as follows:

"Now the said Clinton Davis hereby orders and directs the said James L. Caldwell, as such trustee, out of the interest so due to him semi-annually out of said trust fund, first to retain and pay all the charges and expenses incident to said trust, including taxes, and also the premium as the same becomes due on said policy of insurance; secondly, to pay to said Clinton Davis, on the 20th of January, 1875, the sum of $350, and on the 20th day of July, 1875, $350, and $300 semi-annually thereafter, until the foregoing amount of $1,978 shall be paid; and the said Clinton Davis hereby agrees, orders and directs the said James L. Caldwell to retain all the residue of said semi-annual interest as the same becomes due, and apply the same to said sum of $1,978, with interest thereon at the rate of ten per cent. per annum from the date hereof, until the whole of said sum, including the interest, shall be fully paid. July 22d, 1874.

(Signed) " CLINTON DAVIS."

The said account had been reduced by payments and credits to $1,618.79, at the time the defendant made final settlement of his trust.

7. At the time of his resignation and final settlement, the defendant turned the above mentioned account over to his successor, who has at all times since had possession thereof,

and at the same time he also turned over the policy of life insurance above mentioned to his successor in the trust.

8. Defendant Caldwell in good faith paid for, and advanced to, the said Clinton Davis the said sums of money, set out in said settlement, and no part thereof was ever repaid to him, except as above found. The beneficiary, Clinton Davis, at the time said sums of money were loaned to and paid for him by defendant, was insolvent and a reckless spendthrift, wholly unfit to be trusted with money, all of which was known to defendant; but said Davis had sufficient mental capacity and will power to transact the ordinary business of life. At the time said sums were advanced to and paid for the beneficiary, the only reasonable assurance the defendant had that the same would ever be repaid to him, was the agreement of said Davis that the interest on the fund coming to him, as beneficiary, might be retained by the trustee and applied to the liquidation of said indebtedness, and in case of his death before the full payment thereof, that the fund should be reimbursed from the proceeds of said policy of insurance. The successors of the defendant have not retained the interest from the fund for the purpose of applying the same to the liquidation of said indebtedness, but have regularly paid such interest, as it fell due, to said Clinton Davis, though they had the power under said contract to have done so, and had they done so the fund would long ago have been fully reimbursed for all the sums so loaned and advanced to said Clinton Davis.

Upon the foregoing facts, the court stated the following conclusions of law:

1. The plaintiff is entitled to recover of the defendant the said sum of $525, being the difference between the amount due on said decree of foreclosure, and the sum for which the mortgaged lands were bid in at the sale thereof under such sale, with interest thereon at the rate of ten per cent. per annum from the date of said sale, to wit, August 2d, 1879, collectible without relief from appraisement laws.

2. The defendant is not liable to account further for the

money, so paid to and advanced for the said Clinton Davis, out of the principal of said trust fund.

Appellant excepted to the first of these conclusions of law, while appellee excepted to the second conclusion of law. Over these exceptions, the trial court rendered judgment upon, and in accordance with, its first conclusion of law, in appellee's favor and against the appellant. From this judgment the appellant alone has appealed to this court, and has here assigned as error, among others, that the trial court erred in its first conclusion of law.

Appellee has also assigned here a number of cross errors, and, among others, that the trial court erred in its second conclusion of law.

All the questions of law, at issue between the parties in this cause, are fully and fairly presented for our decision, as well for appellee as for appellant, by the errors which each of them, as we have stated, has predicated upon one or the other of the court's conclusions of law upon its special finding of facts.

In our consideration of this cause, therefore, we shall confine our opinion to the decision of the questions of law, which are presented by, or arise under, the error and cross error which are based respectively upon the two conclusions of law. We will first consider the questions presented by the cross error, assigned by appellee upon the second conclusion of law.

We have heretofore given a full summary of the facts found specially by the trial court, except that we did not set out a copy of the last will of Eli Davis, deceased, or of the first item of such will, which created the trust in favor of Clinton Davis, of which appellant was a former trustee, and of which at the commencement of this suit, and since, appellee was the trustee. We set out here so much of the first item of Eli Davis's will, as is necessary to a proper understanding of the question arising under appellee's cross error, as follows :

"*First.* I will and direct that forty thousand dollars be set apart and held by my administrators, or such trustee or trustees as may be appointed by the court having probate jurisdiction, to be held in trust under the direction and supervision of said court, for the use of my sons Harvey Davis and Clinton Davis, in equal amounts, during their natural lives, the interest thereon to be paid to them semi-annually by said trustee or trustees, and after their deaths, or the death of either one, the principal to go to their heirs, in equal amounts. * * * * But it is my express will and direction, that neither of my said sons shall have any portion of the principal of the above sum, except in case of absolute necessity for their support, as above stated."

It was found by the court that Clinton Davis had become indebted to appellant, as trustee of his share of the fund, for moneys paid for and advanced to the beneficiary by the appellant, in good faith; and that to secure and indemnify appellant on account of such indebtedness, the beneficiary executed to the former a written assignment of a part of the semi-annual interest to become due thereafter, until such indebtedness should be fully paid. It was upon this part of the case, and all the facts found in connection therewith, the learned court stated as its second conclusion of law, that appellant was not liable to account further for the moneys so paid to and advanced for Clinton Davis, out of the principal of the trust fund. This conclusion of law is vigorously assailed by appellee's learned counsel, upon the ground, as we understand their argument, that it was not competent for the beneficiary, Clinton Davis, to make a valid assignment in advance of any portion of the interest or income of the trust fund.

Counsel cite a number of decisions of the courts of last resort, in our sister States, which seem to support their position. We do not think it is necessary to examine these decisions, however, because the precise point made was considered and decided by this court adversely to the views of

appellee's counsel, in *Martin* v. *Davis*, 82 Ind. 38. In the case cited, the same item of the last will of Eli Davis, deceased, was before this court for consideration in a controversy between Harvey Davis, the other beneficiary in the trust fund, and Simon Martin, the trustee of his share of such fund, and other persons. It that case, the same point was made as the one now made by appellee's counsel; but this court held that either beneficiary could make a valid assignment of the income bequeathed to him, before the time fixed for its payment, the will imposing no restriction in reference thereto. The court there said: "We need not decide in this cause whether the owner of personal property, in a testamentary disposition thereof, may or may not give in trust its income, free from the debts of the beneficiary, or restrain him from the alienation thereof. This will gave the beneficiary an unrestricted interest in the income of the fund during his life, which, where there is no statutory prohibition, as in this case, he may alienate as a whole or in part. Perry Trusts, section 386; Story Eq. Jur., sections 974, 1044, 1047; *Wood* v. *Wallace*, 24 Ind. 226; *Farmers' and Mechanics' Savings Bank* v. *Brewer*, 27 Conn. 600."

Our conclusion is, therefore, that the trial court did not err in its second conclusion of law upon the facts specially found.

Did the court err in its first conclusion of law? We are of opinion, that this question ought to be, and must be, answered in the affirmative. The whole case against appellant, as stated in appellee's complaint, was founded upon the alleged fraud of appellant, his fraudulent conduct and fraudulent practices, in the discharge of the duties of his trust as trustee of the fund of which Clinton Davis was the beneficiary. The court found that, as trustee, appellant made regular reports of his trust, which were all approved by the proper court, and that, when he resigned his trust, he made his final settlement report to the approval of the court, that he fully settled with his successor in such trust, and that he

was finally discharged by an order of the court from the duties and liabilities of the trust.   But the court wholly failed to find that appellant was guilty of any fraud whatever, or any fraudulent conduct or practices, in the discharge of the duties of his trust.   Fraud under our law is always a question of fact, and, when alleged, it must be proved and found as a fact.   *Lockwood* v. *Harding*, 79 Ind. 129; *Morris* v. *Stern*, 80 Ind. 227.

In a special finding of facts, in a case where alleged fraud is one of the facts in issue, the fact itself must be found by the court, and not the evidence or so-called badges of fraud. *Elston* v. *Castor*, 101 Ind. 426 (51 Am. R. 754); *Stix* v. *Sadler, ante*, p. 254.

The facts, upon which the first conclusion of law was rested, were not found to be fraudulent.   It was not a fraud *per se*, for appellant to loan to his own son a part of the trust fund, if such loan were well secured; and the court found the value of the land, mortgaged to secure such loan, to have been more than sufficient to pay the loan, when the land was bought in by appellee, for the benefit of his trust.

Upon this branch of the case, we conclude that the facts found by the court do not sustain the allegations of appellee's complaint, and, therefore, do not authorize or support the first conclusion of law.

The judgment is reversed with costs, and the cause is remanded with instructions to set aside the first conclusion of law and to restate the same by a finding for defendant below, and to render judgment accordingly.

Filed Jan. 15, 1887; petition for a rehearing overruled March 29, 1887.