## FRENSLEY et al. v. FRENSLEY.

No. 26355.    May 12, 1936.

Petition for Rehearing Withdrawn
June 9, 1936.

Stephen A. George, for plaintiffs in error.

Sigler & Jackson, for defendant in error.

BUSBY, J. This case involves the efforts of a divorced wife to reach the income and proceeds of a trust created in favor of her former husband (and others) by his deceased father.

Some time prior to May 14, 1929 (the exact date not shown in the record), B. F. Frensley (otherwise known as Frank Frensley) died testate. By the terms of his will his property was to be divided among his six children, or their descendants. The plaintiff in error Cecil Frensley (also known as Rubin Cecil Frensley) is one of the children. It was not contemplated by the testator that all of the property should immediately pass into the hands of the children. A large portion of the real estate was placed in a trust under restrictive provisions. However, a specific devise or bequest independent of the trust provision was made to each of the children. The devise of specific property to Cecil Frensley contained in the will read as follows:

"To my son, Rubin Cecil Frensley, I give, devise and bequeath that certain residence adjoining the city of Ardmore, which I have built for his use and occupation and known as his property, together with ten (10) acres of ground upon which said house is situated to be designated and set part in conformity with the government subdivision as near as may be out of the twenty (20) acres on which said house is located."

In the first provisions of the will relating to the creation of a trust a number of pieces of real estate were described, and following this description it was said, relating thereto:

"I do give, devise and bequeath unto R. B. Frensley, T. B. Frensley and Moran Scott, to have and to hold, for a period of twenty (20) years from the date of my death in trust nevertheless and upon the uses and trust and for the purposes following: to be held, managed, and controlled by said trustees, or their successors in trust for the use, benefit and advantage of my children, Rubin Cecil Frensley, Georgia Pearl Brqazile (sic), Mary Sue Frensley, Virgie Frank Brazile, Margarete May Elliott and Mildred Garrett, the whole net income or earnings accruing from said property after all taxes and necessary charges have been paid to be paid over to my said children share and share alike during the period of this trust as often as once a month, if desired, upon their separate order or receipt and without being subject in any manner to the order of intervention, or control of any husband or wife or any or either of them may have, or of any creditor of any or either of them, or of their husband or wife aforesaid. My object being to secure to each of my said children for twenty (20) years the use and enjoyment of all the income from said property beyond and without the intervention or control of any husband or wife of any, or either of my said children, or any creditors of them; and upon the decease of any one of my said children before the expiration of trust period herein created the said principal trust property and all earnings or accumulations thereon unclaimed by any one of my said children in hands of said trustees, or their successors in said trust after deducting expenses incident to said trust is to be paid over and distributed to the issue of any one or more of my said children who are deceased, then living, if any, for their use and benefit share and share alike; it being intended that the issue of any deceased child of mine shall take the interest of its deceased parent; but in case any of my said children shall die without issue, or direct heirs, then in that case the whole of the said principal trust property and proceeds and earnings shall be paid over and belong to my children then living in equal parts, share and share alike. And on the termination of the trust period herein, should any of my children die before said termination without issue, then the principal trust property shall go to my remaining children then living and to the children of those who then may be dead share and share alike, except children of any deceased child of mine take only their parent's share."

The remainder of the real estate not specifically covered by the foregoing provision and not specifically given unrestricted to the beneficiaries under the will was placed in

trust under the following testamentary provision:

"Third: All of the residue and remainder of my real estate of every kind and description where ever located, I do give, devise and bequeath to R. B. Frenasley (sic), T. B. Frensly (sic) and Moran Scott and their successors and assigns to have and to hold for the period of twenty (20) years, but in trust, however, and upon the use and trust and for the purposes following: to be held, managed and inbested (sic) and from time to time reinvested as need be by said trustees and the whole net interest or income from said property to be paid over to my children, Georgie Pearl Braxile (sic), Virgie Frank Braxile (sic), Rubin Cecil Frensley, Mary Sue Frensley, Margarete May Elliott and Mildred Garrett share and share alike as often as once in six months if desired, upon the order or receipt of each one personally, without being subject in any manner to the order, intervention or control of any husband or wife. But in case of the death of either, or any of my said children in this paragraph mentioned without issue, then in such case, the whole of such principal trust property and its net earnings shall be paid over to those still living, or their lawful heirs for his or her own use and benefit. And on the termination of the trust in this paragraph mentioned, then the property shall become absolute property of my children, or their heirs without limitation or restriction, to share and share alike."

In other portions of the will the trustees were authorized, upon certain conditions, to sell and dispose of portions of the real estate placed in their charge and control and to pay the proceeds of any such sale to the children of the deceased, share and share alike. It is provided that:

"I do hereby authorize and empower my said trustees above named, or any successors in said trust to sell and dispose of any property, real or personal that I may have at the time of my death, except the business lots and buildings in Ardmore, Okla., and to make good and valid instruments of transfer thereof of any part or any rights therein whenever in the judgment of said trustees any of said property is depreciating in value and to pay over to my said children share and share alike the proceeds of such sale."

Provision was likewise made for the substitution of other trustees in the event the trustees named in the will should fail or be unable to act.

The plaintiff in error T. B. Frensley became executor under the will and sole trustee under the trust provisions thereof. He became involved in this litigation by reason of his fiduciary connection with the estate. The details of the method and means by which he now occupies this position are not important in this litigation and will not be discussed.

On the 14th day of May, 1929, the defendant in error, May Frensley, as plaintiff in the trial court, being then the wife of Cecil Frensley, commenced this action to obtain an absolute decree of divorce and a judgment for alimony. While the action was pending she filed an amendment to her petition seeking to have T. B. Frensley, executor of the estate and trustee under the will, made an additional party defendant for the purpose of requiring him to pay into court such sums as might be due from the estate or trust to Cecil Frensley. It does not appear from the record that a formal order making T. B. Frensley a party to the action was ever entered. However, he filed a separate answer in the case on the 26th day of September, 1929.

Subsequent recitations in the record disclose that on some date not shown by the record now before us the plaintiff obtained a decree of absolute divorce and a judgment awarding her alimony. This decree and judgment is not included in the case-made and the precise terms thereof do not appear at any place in the record. The absent judgment is, of course, clothed with the presumption of validity, both as to the decree of divorce and the alimony provisions. Apparently the judgment referred to was entered prior to the time that the separate answer of the executor was filed. We gather this information from allusions in the answer of the executor to the asserted fact that a judgment had previously been rendered in the action.

Subsequent to the judgment and under the answer of the executor and other pleadings filed, an issue was made upon the question of whether the executor should be required to pay to the divorced wife in satisfaction of the alimony judgment moneys due to Cecil Frensley by virtue of the will of his deceased father. An attempt was made to settle the issue by an agreed judgment. Upon oral agreement of the parties in open court the former alimony judgment was vacated and another and different judgment was entered in lieu thereof. This latter judgment reads:

"Now, on this the 27th day of February, 1930, this matter coming on for hearing, the plaintiff appearing in person and by her at-

torney, Guy H. Sigler, and the defendant appearing in person and by his attorney, S. A. George, and the parties in open court entered into the following agreement, to wit:

"Whereas, B. F. Frensley, the father of the defendant having heretofore died and having by his last will and testament willed to the defendant the ten acres of land heretofore described in the original judgment in this case, and in said will the said B. F. Frensley conveyed to T. B. Frensley, trustee, certain property located in Carter county, Okla., and described in the last will and testament of B. F. Frensley, and said last will and testament providing that said T. B. Frensley should collect the rents and revenues from said property for the period of twenty (20) years and pay the same to the children of said B. F. Frensley, deceased. And it appearing that the said defendant is entitled to one-sixth (1/6) of said income, now it is agreed that the judgment for alimony heretofore entered in this case shall be set aside and the parties agree that the plaintiff shall be the owner of an undivided one-half interest in the ten-acre tract of land, subject to the mortgage now upon the same, and that said plaintiff shall receive and said T. B. Frensley shall pay to the plaintiff one-half of all sums of money to which the defendant may be entitled under said will; and that she shall receive said money during her lifetime and so long as she remains unmarried, but if said plaintiff shall remarry or die, that all rights herein given her shall cease, and the court having approved said agreement in open court enters judgment for the plaintiff as in said agreement stated.

"Wherefore, it is ordered, adjudged and decreed by the court that the plaintiff be and she is hereby adjudged to be the owner of an undivided one-half interest in the ten acres of land heretofore described in the judgment entered in this case, subject to the mortgage and other liens of record now on said property.

"It is further ordered, adjudged and decreed by the court that the plaintiff shall receive and said T. B. Frensley shall pay to said plaintiff one-half of all the sums of money hereafter accruing to which the defendant may be entitled to under the will of his deceased father, B. F. Frensley, and said T. B. Frensley is hereby ordered and directed to pay said money to said plaintiff during the twenty (20) years which he is to act as trustee for said property and his successors in office and is hereby directed to pay said sum to the plaintiff during said period.

"It is further ordered and directed that if the plaintiff shall remarry or die during said term that all rights which she may have under this judgment shall cease."

For several years subsequent to the entry of the above judgment the parties thereto treated the same as valid and governed their conduct accordingly. The executor or trustee paid to the divorced wife one-half of the income derived from the real estate held in trust. This dispute arose when the trustee sold some of the real estate held in trust under the power conferred by the will and turned over a full one-sixth of the proceeds of the sale to Cecil Frensley. The divorced wife then contended that one-half of the one-sixth should have been delivered to her. For the purpose of obtaining the same she filed in the trial court on the 3rd day of January, 1935, her pleading styled "Petition for Citation," in which she sought to procure a court order requiring the trustee to account for and pay to her one-twelfth of the sale price of the real estate. Separate answers to this pleading were filed by both T. B. Frensley and Cecil Frensley in which it was asserted, in substance, among other things, that the alleged judgment was void for uncertainty. The judgment was also attacked on the theory that it constituted an ineffectual attempt to alienate income from the trust estate in violation of the restrictive provisions contained in the will. Upon hearing, the trial court decided in favor of May Frensley, and judgment was entered requiring the trustee to pay one-twelfth of the proceeds of the sale of the real estate, amounting to $423.80, to May Frensley on the theory that such payment was required by the judgment of February 27, 1930, and that the same was valid.

Cecil Frensley and May Frensley were married in 1905, and their children are all adults. There is, therefore, in this case no question concerning duty to maintain, support, or educate minor children.

The case is presented to this court on appeal by Cecil Frensley and T. B. Frensley. It is first asserted by them that:

"The purported judgment and order of February 27, 1930, upon which the judgment of January 31, 1935, is predicated, is void on its face for the reason that the amount payable thereunder is indefinite and uncertain; such amount not being determined or ascertainable under the terms of said purported judgment."

In considering the validity of this judgment we must take cognizance of the nature of the case in which it was rendered. District courts of this state in granting divorces have the unquestioned power to settle the financial differences between the parties to such actions. Broadly speaking, the property with which they deal may be separated into two classes, namely, property acquired

during coverture through the joint efforts of the parties and the separate property of either or both of the spouses. In dealing with the property acquired through the joint efforts of the parties, the authority of the court consists of its power to divide and apportion upon an equitable basis. In dealing with the separate property of either of the spouses, the power of the court to award a portion of such separate property to the other spouse who does not own a legal interest therein is based upon its authority to award alimony.

In this case all of the property with which we are dealing is the separate property of the husband. It was acquired by him under the will of his deceased father. His ownership of the property is not due to the joint efforts of himself and his divorced wife. We are therefore concerned with the power of a court in a divorce action to award to one spouse alimony out of the separate property of the other. This power is regulated by statute. Section 672, O. S. 1931, provides in part as follows:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife * * * shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable."

Under this statutory provision the court is authorized to grant alimony in either of two forms: First, by decreeing to the wife specific property, either real or personal; second, by decreeing to her a sum of money. In asserting that the judgment rendered in this case is void, the plaintiffs in error invoke the rule repeatedly recognized by this court that:

"Where, in a suit for divorce, the court awards alimony to the wife, to be paid in money, it must be for a definite sum, to be paid in gross or in installments."

In other words, when the court renders a judgment creating a responsibility on the part of the divorced husband for the payment of alimony in money to his former wife, the total sum of alimony required to be paid under the judgment must be capable of being determined by reference to the decree. See Dutton v. Dutton, 97 Okla. 234, 223 P. 149; Boulanger v. Boulanger, 127 Okla. 103, 260 P. 49; West v. West, 134 Okla. 226, 273 P. 209; Javine v. Javine, 134 Okla. 283, 273 P. 267; Hadley v. Hadley, 129 Okla. 219, 280 P. 1097; Oder v. Oder, 149 Okla. 63, 299 P. 202; Flaxman v. Flaxman, 169 Okla. 65, 35 P. (2d) 950; Finley v. Finley, 174 Okla. 457, 50 P. (2d) 643.

An examination of the foregoing cases discloses that they relate to the power of the court to make a divorced spouse responsible for the payment of alimony in money as distinguished from the authority of the court to award alimony in the form of specific property. In other words, they deal with the second alternative power mentioned in the statute. The trial court in this case determined as a matter of law, and we think rightly, that the rule established in the cases above mentioned has no specific application to the case at bar for the reason that the alimony awarded or attempted to be awarded in this case constitutes a grant of specific property, as distinguished from a judgment making the husband personally liable for the payment of a sum in money, either in gross or in installments.

The right to receive the proceeds or income from a trust is a property right, and, as such, in itself, is a species of property. The fact that income from the trust when received will be in the form of money does not deprive the **right to receive the same** (which is conferred by the instrument creating the trust) of its classification as a form of specific property. Thus a court in awarding a decree for alimony could, as a part thereof, provide that one or more promissory notes formerly belonging to the husband should be transferred to and become the property of the wife. Similarly, accounts receivable belonging to the husband might be transferred by the decree for alimony under the power of the court to award specific property. A decree in such a case is not rendered invalid by reason of the fact that the amount which would ultimately be collected on the obligations thus transferred may not be ascertainable at the time the decree for alimony is entered. The species of property above referred to for comparative purposes are similar to the property attempted to be awarded as alimony in this case. The practical value of the property in each instance is the reasonable expectation that money will be derived therefrom. The fact that money will be received by reason of the ownership of the property right does not deprive the property itself of its distinct classification as such.

We conclude that since the decree in this case constitutes an exercise of the power of the court to award specific property, as distinguished from a sum payable in money, it is not rendered invalid under the rule applicable to money judgments as stated in Dutton v. Dutton and other cases cited, supra.

Our conclusion in this respect, however, does not completely dispose of the contention of the plaintiffs in error concerning the uncertainty of the judgment.

The rule which we have just considered requires certainty in the amount to be collected under a judgment decreeing alimony to be paid in money. It arises from a want of power on the part of the court to render such a judgment unless the amount thereof can be detemined at the time of entry of judgment. It does not deal with or pertain to any uncertainty in the **meaning of the judgment itself.** Thus, under that rule, a money judgment for alimony may be void for failure to fix the aggregate liability, though the meaning of the judgment is perfectly clear. There are other rules, however, requiring certainty in the meaning of judgments which apply to all judgments, including alimony decrees awarding specific property.

The purpose of a judgment is to settle a controversy. In order to do so, it must be "definite and certain, comprehending clearly the relief sought and granted and the final determination of the rights of the parties to the action." See Maroney v. Tannehill, 90 Okla. 224, 215 P. 938. See, also, 33 C. J. p. 1195, par. 128; 15 R. C: L. p. 592, par. 29. It is not to be understood, however, that under the foregoing rule the ordinary and usual rules of construction are not available for the purpose of interpreting the meaning of ambiguous or uncertain language used in a judgment. On the contrary, rules of construction may be employed to eliminate such uncertainty. Thus the meaning of any particular language may be determined by its relation to the judgment as a whole. Circumstances surrounding the making of the judgment may likewise be considered. The rule is stated by Freeman on Judgments (5th Ed.) page 133, in the following language:

"In construing any portion of the language of a judgment, while it should be taken in its ordinary legal meaning, it must be considered in connection with its context and the judgment as a whole, and the circumstances surrounding the making of the judgment—the condition of the cause in which it was rendered."

In most respects there is no uncertainty concerning the meaning of the judgment now before us. It definitely decrees to May Frensley an undivided one-half interest in a ten-acre tract of land. The tract of land thus conveyed was no part of the trust res. It was a part of the specific bequest contained in the will, which, by the terms of that instrument, passed unrestricted into the hands of Cecil Frensley. The parties to this action do not question the validity of this portion of the decree. The remainder of the judgment must be construed with reference to the trust provisions of the will. The property placed in trust by the terms of the will consisted entirely of real estate (except that in a provision of the will not previously mentioned and with which we are not concerned in this case, the trustee was directed to construct a building on a portion of the real estate and to use money derived from the sale of personal property for that purpose. The building, when constructed, of course, became real estate). Upon the termination of the trust at the end of the 20-year period therein provided, the trust res or principal trust property is to be distributed among the children of the deceased or the issue of such children. The distribution of the trust property necessarily contemplated a distribution of the property itself. Most of the property will probably be distributed under the terms of the will without sale. The will, however, contains a power to sell upon certain conditions. The power to sell is a conditional power which does not extend to all of the property. Thus in a normal administration of the trust, Cecil Frensley could reasonably expect that, during the period thereof, he would receive his proportionate part of the income derived from the property payable monthly, and that, upon the termination of the trust, he would receive in property his proportionate share thereof.

Referring to the judgment in the light of these provisions of the will, it is clear that the judgment contemplated that May Frensley, as the former wife of Cecil Frensley, should receive one-half of the income derived from the rents of the property held in trust. It is equally clear that it is not contemplated by the judgment that she was to receive any part of the property constituting the trust res upon the final distribution thereof at the termination of the trust period. As we understand her briefs, she does not contend that she will be entitled to any portion of the property when

it is distributed at the end of the 20-year period. But she does assert a right to participate in the proceeds of sales conducted during the life of the trust. She points out the provision of the will vesting discretionary power in the trustee to sell portions of the trust property and distribute the proceeds of the sale, thus terminating the trust as to that portion of the trust res. She says, in effect, that, even though the decree did not purport to give her a distributive share of the principal trust property upon the termination of the trust, she may rightfully claim an interest in the proceeds of the sale of the trust property, if, during the period of the trust, the trustee should exercise his discretionary power to sell. Under this contention she is now claiming a portion of the proceeds of the property sold by the trustee. Thus she is claiming a part of the trust res. The question then is: Is her claim well founded under the provisions of the decree? It is asserted by her that controlling importance should be attached to that portion of the decree providing that she should receive "one-half of all sums of money hereafter accruing to which the defendant may be entitled to under the will of his deceased father." The language thus alluded to is, when taken by itself, broad enough to lend color to her claim. However, the decree, which is based upon agreement of the parties, must be interpreted as an entirety, and the language referred to must be construed in its relation to other portions of the judgment. The decree specifically refers to the property therein dealt with. It recites the existence of the ten-acre tract and vests in May Frensley a one-half interest therein. It specifically refers to the fact that the defendant is entitled to one-sixth of the income derived from the property held in trust.

Under a fair construction of the language used in the decree, it was not intended thereby to convey any other or different property than that specifically mentioned therein, namely, the ten-acre tract of real estate and the one-sixth of the income from the trust during the period thereof. The decree contains no allusion whatever to the principal of the trust property and does not purport to give May Frensley a part thereof. It contains no reference to the power of the trustee to sell portions of the trust property and divide the proceeds of such sales. It does not purport to grant to May Frensley a right to participate in the proceeds of a sale.

It should be remembered that the property involved in this action was, prior to this decree, the separate property of Cecil Frensley, and that such portions thereof as are not alienated by the decree are still his.

The parties completely overlooked or ignored the provisions of the will authorizing the sale of a portion of the trust property and the distribution of the proceeds thereof. Had it been the intention of the parties and the court in rendering the decree that May Frensley should participate in the proceeds of the sale of a part of the trust res, a specific declaration declaring her right in that respect would surely have been incorporated in the journal entry.

The decree does not operate to convey from Cecil Frensley to his former wife portions of the trust res, or the proceeds of the sale thereof, merely because isolated portions of the decree contain language broad enough, when considered alone, to cover the proceeds of such sale. These items are not included in the property dealt with in the decree as described therein.

Upon consideration of the provisions of the journal entry, viewed in the light of surrounding circumstances and the nature of the property affected thereby, we are impelled to conclude that May Frensley is not by the terms of the decree granted any interest in the principal of the trust property or in the proceeds of a sale thereof.

Our conclusion in this respect in itself requires a reversal of the judgment of the trial court, but if we should rest our decision at this point, we would leave in doubt the validity of that portion of the decree respecting the income from the trust property which Cecil Frensley now says is void upon grounds not previously considered in this opinion. We therefore deem it necessary, in order to set at rest the rights of the parties, to consider the reasons which are said by Cecil Frensley to render the decree invalid as previously interpreted in this opinion.

It is contended by the plaintiff in error that the "purported judgment and order of February 27, 1930, is void and unenforceable for the reason that it violates the trust provisions of the last will and testament of B. F. Frensley, deceased." The argument is based upon the theory that the trust created by the will is by reason of the restrictive provisions therein contained a "spendthrift trust." It is asserted that these restrictive provisions render the income derived from such trust inalienable by either of the cestuis que trustent. It is urged that the

agreement upon which the judgment was based was an attempted voluntary or involuntary alienation of income.

Cecil Frensley takes the position that in this jurisdiction a valid spendthrift trust, whereby all of the income may be placed beyond the reach of creditors of the beneficiaries of the trust and restrained against voluntary alienation, can be and in this case was created. May Frensley, on the other hand, contends that such restrictions against alienation are invalid in their entirety. Neither of these positions is entirely correct. In support of her position May Frensley calls our attention to a line of cases holding invalid attempted restraints on alienation of vested legal interests, as, for instance, the case of Swan v. Gunderson (S. D.) 215 N. W. 884. The cases cited are in accordance with the general rule upon restraints therein dealt with as recognized by leading texts upon the subject. Bogert, Trusts and Trustees, vol. 1, page 702, par. 220. However, they do not concern the validity of spendthrift trusts or of restraints upon alienation of income which may be legally imposed through the creation of such estates.

Spendthrift trusts are principally characterized by restrictions against voluntary and involuntary alienation of income to be derived from the trust (Bogert on Trusts and Trustees, vol. 1, page 715, par. 222), although the restrictions may be extended to protect the trust res in transit to the beneficiary upon the termination of the trust. See White v. Williams, 172 Ill. App. 630, and Southern Nat. L. Ins. Co. v. Ford, 151 Ky. 476, 152 S. W. 242. See, also, annotation in 2 A. L. R., page 858, and cases therein reviewed. Since under our interpretation of the decree now before us there is no attempt to alienate any portion of the principal of the trust property, we are concerned in this case only with the validity of the provisions of the will restraining alienation of the income to be derived from the trust, and our further discussion will be limited to that phase of the law.

In those jurisdictions where spendthrift trusts are upheld their validity is sustained out of consideration of the right of the owner of property to dispose of the same in accordance with the dictates of his own judgment, rather than upon consideration of any right or asserted right of a beneficiary to own property which is beyond the reach of his creditors and not subject to alienation by his own voluntary act. 25 R. C. L. 353. Similarly, it is not essential to the validity

of a spendthrift trust that the beneficiary thereof be a spendthrift, so long as the intent to create such a trust is reasonably clear from the instrument by which it is created.

In England and in a few of the states in this country spendthrift trusts are of doubtful validity. Bogert on Trusts and Trustees, vol. 1, page 72. However, in most of the states of the Union they are expressly sanctioned at least to a limited extent, either by legislative enactment or by judicial decision independent of legislative sanction. 25 R. C. L. pp. 351-355, paragraphs 3-5. By virtue of the statutory provisions of this state we follow what is known as the New York system, under which restrictions upon the alienation of the income to be derived from such a trust are valid to the extent necessary to support and educate the beneficiary in the manner of life to which he has been accustomed. The restrictions upon alienation apply to claims for alimony. Eaton v. Eaton (N. H.) 125 Atl. 433, 35 A. L. R. 1034; anno. 35 A. L. R. 1035. The surplus of the income over and above such amount can, of course, if no valid provision is made for accumulations, be reached by the creditors, and it would seem equally clear that it should be subject to voluntary assignment by the beneficiary. Anno. 16 A. L. R. 552.

Our statutes (secs. 11825 and 11823, O. S. 1931) provide:

"Where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum that may be necessary for the education and support of the person for whose benefit the trust is created, is liable to the claims of the creditors of such person, in the same manner as personal property which cannot be reached by execution.

"Liability to third persons for any act, omission, or obligation of a trustee or trustees of an express trust when acting in such capacity, shall extend to the whole of the trust estate held by such trustee or trustees, or so much thereof as may be necessary to discharge such liability, but no personal liability shall attach to the trustee or the beneficiaries of such trust for any such act, omission or liability."

The wealth of authority supporting such trusts to the extent authorized by statute, or even in the absence of legislative sanction, would seem to dispel any doubt concerning the validity of such trusts when they are created within the prescribed limitations. Bogert on Trusts and Trustees, vol.

1, par. 220, et seq. See generally, also, anno. 16 A. L. R. 554; 65 C. J. 230, 232.

Questions frequently arise concerning the sufficiency of the restriction placed in the instrument creating the trust to identify the estate created as a spendthrift trust. In this case May Frensley takes the position that the restraints contained in the will of B. F. Frensley are insufficient for this purpose. In considering this contention a careful reading of the provisions of the will as set forth in this opinion will disclose that the property placed in trust is divided into two groups: (a) Certain property specifically described in the will, and (b) residuary real estate not therein specifically described. The trust provisions with reference to the two classes of property are different. The restrictions imposed upon alienation of the income from the described property are much broader than those imposed upon the alienation of the income from the property affected by the residuary provision. With respect to the first class of property, it is provided that the net income shall be distributed among the children or their descendants without being "subject in any manner to the order of intervention or control of any husband, or wife, or any or either of them * * * or of any creditors of any or either of them, or of their husband or wife." The testator also declared his purpose to secure to each of his children for 20 years the use and enjoyment of all of the income free from the intervention of the wives or husbands of his children or creditors. May Frensley takes the position that this provision constitutes a restraint upon involuntary alienation, but does not in any way restrain the right of the children to voluntarily alienate or assign the income. We are unable to agree with this contention. To do so would defeat the expressed object of the testator that his children should enjoy during the period of the trust the income created thereby.

It is not necessary in order to create a spendthrift trust that an express restraint on voluntary alienation be therein contained. Such a restraint may be inferred from an express restraint upon involuntary alienation coupled with other language, such as appears in the will now before us, indicating an intent on the part of the testator that voluntary alienation also be prohibited. The intention of the settlor is the governing factor. Bogert, Trusts and Trustees, vol. 1, par. 225; 26 R. C. L. 1268. An illuminating case upon this point is the case of Hopkinson v. Swaim, 284 Ill. 11, 119 N. E. 985, in which a will containing restrictive provisions less rigid than the ones now before us was interpreted to prevent the voluntary as well as involuntary alienation. It was said by the Illinois court in that case:

"It is argued that, even if the trusts created by William Swaim's will are separable, the trusts for the lives of the daughters, respectively, are void as illegal restraints upon the enjoyment of the estate beyond the period permitted by the rule against perpetuities. It is claimed that the appointment imposes no restraint upon alienation, but that, if it does so, the restraint is void. Trusts whereby the income from property, real or personal, may be required to be paid to a beneficiary, but shall be beyond his control and beyond the reach of his creditors while in the hands of the trustee, may be created and will be sustained by the courts. Steib v. Whitehead, 111 Ill. 247; Wagner v. Wagner, 244 Ill. 101, 91 N. E. 66, 18 Ann. Cas. 490; Broadway Nat. Bank v. Adams, 133 Mass. 170, 43 Am. Rep. 504; Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254. The trusts in favor of the daughters for their respective lives were so qualified. While the will does not expressly state that the income shall not be subject to alienation by the beneficiary, it does state that the income shall be paid to each one directly, which means without the intervention of any medium, agent, or go-between, and not only for her separate use and benefit, free and exempt from the power and control of her husband, but also from liabilities for any debts or engagements. There could be no such exemption from liability for debt if the beneficiary could convey or assign the income, for if she could do so it could also be seized in execution or attachment or reached by a creditors' bill. The intention of the testator determines the construction of the will, and it is not necessary that a restriction upon alienation shall appear in express terms if the intention is clearly to be gathered from the instrument. Wagner v. Wagner, supra; Smith v. Towers, 69 Md. 77, 14 Atl. 497, 15 Atl. 92, 9 Am. St. Rep. 398; Grothe's Appeal, 135 Pa. 586, 19 Atl. 1058. The only object the testator could have had in creating the trust was to secure to his daughters the personal receipt in their own hands of the net income of the estate without interference from their husbands or any creditor, and this object would be entirely defeated if they might immediately convey the property and assign the income. It was clearly the testator's intention that his daughters should not have the power to alienate the income during their lives."

The language used is equally applicable to the case at bar. See, also, in this connection Shankland's Appeal, 47 Pa. 113. As noted by the Illinois court, restrictions on

one form of alienation would be rendered practically negatory if, through another means, alienation could be readily accomplished.

We therefore conclude that the restrictions contained in the portions of the will now before us pertaining to specifically described property are sufficient to prevent both voluntary and involuntary alienation. There is some question concerning the sufficiency of the restriction contained in those portions of the will by which the undescribed real estate is placed in trust. They are narrow and meager. However, under our view of this case, we deem it unnecessary to pursue our inquiry of this subject further.

Unquestionably the will now before us creates a trust, which, as to at least a portion of the income, is endowed with spendthrift restrictions, valid and enforceable as such. However, there is a legal limit upon the validity of such restrictions. They are, under our statute, enforceable only to the extent necessary to support and educate the beneficiary according to his standing in life. The surplus may be reached by creditors, or voluntarily assigned. Presumably the restrictions upon alienation of income from the trust were considered by the trial court when it rendered judgment upon the oral agreement of the parties on the 27th day of February, 1930. The portion of the income assigned by the judgment is presumed then to have been determined to be surplus. Cecil Frensley failed to make any showing whatever that the remaining unassigned portion of the income was insufficient to support him. Nor is it probable that such a showing would have been permissible in view of the previous judgment. We cannot refrain from the pertinent observation that the decree of assignment was entered more than six years ago, and, although since that time he has been limited to one-half of the income, it is quite apparent that he has survived. We conclude that the portion of the income assigned by virtue of the judgment now before us was surplus, or unrestricted income, and adjudicated by the trial court to be alienable as such.

It is also contended that the plaintiff in error T. B. Frensley was improperly made a party to this litigation and that the method of procedure was wholly improper. A serious question might have arisen under this contention had it been raised at the proper time. T. B. Frensley became a party to the litigation prior to the time the challenged judgment was entered. At the time of the entry of that judgment he was in court and participated in the agreement upon which the same was based, thus, by implication, withdrawing any previous objections to being made a party to the litigation. For a number of years since the judgment was entered he has acquiesced therein. Under these circumstances, it is now too late to raise the question of the impropriety of making him a party. By reason of the absence of a timely objection to the method herein used to reach the income from the trust property, questions in relation thereto will not be discussed.

Other questions are mentioned in the briefs which we deem it unnecessary to consider.

The judgment of the trial court directing the plaintiff in error B. F. Frensley to account to May Frensley for a portion of the proceeds of the sale of the trust property is reversed for the reason that such proceeds of the sale were not affected by the previous decree of the court. The judgment assigning to her a portion of the income from the trust estate is approved as valid upon the theory that the assigned portion of the income was adjudicated to be surplus income from the trust estate and alienable as such.

OSBORN, V. C. J., and WELCH, PHELPS, and GIBSON, JJ., concur. McNEILL, C. J., and RILEY, J., dissent. BAYLESS, J., absent.

McNEILL, C. J. (dissenting). I am unable to agree with the views expressed in the majority opinion. I do not believe that a spendthrift trust is created by the will of decedent. This case was assigned by direction of the court to three members of the bar for a proposed opinion under a plan adopted by the court for the purpose of relieving the congested condition of the docket. These special masters prepared a proposed opinion, and it is my view that the court should have adopted that opinion. It is as follows:

"PER CURIAM. This is an action brought by May Frensley, plaintiff in the lower court, against Cecil Frensley and T. B. Frensley, defendants in the lower court. They will be referred to as they stood in the trial court.

"The original action is one for divorce, and the judgment of divorce was entered granting alimony to the plaintiff. Thereafter, on the 27th day of February, 1930, the judgment was entered based upon an agreement in open court, the pertinent part of which judgment is as follows

" 'Judgment.

" 'Now on this the 27th day of February, 1930, this matter coming on for hearing, the plaintiff appearing in person and by her attorney, Guy H. Sigler, and the defendant appearing in person and by his attorney, S. A. George, and the parties in open court entered into the following agreement, to wit:

" ' "Whereas, B. F. Frensley, the father of the defendant, having heretofore died and having by his last will and testament willed to the defendant the ten acres of land heretofore described in the original judgment in this case, and in said will the said B. F. Frensley conveyed to T. B. Frensley, trustee, certain property located in Carter county, Oklahoma, and described in the last will and testament of B. F. Frensley, and said last will and testament providing that said T. B. Frensley should collect the rents and revenues from said property for the period of twenty (20) years and pay the same to the children of said B. F. Frensley, deceased. And it appearing that the said defendant is entitled to one-sixth (1/6) of said income, now it is agreed that the judgment for alimony heretofore entered in this case shall be set aside and the parties agree that the plaintiff shall be the owner of an undivided one-half interest in the ten-acre tract of land, subject to the mortgage now upon the same, and that said plaintiff shall receive and said T. B. Frensley shall pay to the plaintiff one-half of all sums of money to which the defendant may be entitled under said will; and that she shall receive said money during her lifetime and so long as she remains unmarried, but if said plaintiff shall remarry or die, that all rights herein given her shall cease," and the court having approved said agreement in open court enters judgment for the plaintiff as in said agreement stated. * * *

" 'It is further ordered, adjudged and decreed by the court that the plaintiff shall receive and said T. B. Frensley shall pay to said plaintiff one-half of all the sums of money hereafter accruing to which the defendant may be entitled to under the will of his deceased father, B. F. Frensley, and said T. B. Frensley is hereby ordered and directed to pay said money to said plaintiff during the twenty (20) years which he is to act as trustee for said property and his successors in office and is hereby directed to pay said sum to the plaintiff during said period.

" 'It is further ordered and directed that if the plaintiff shall remarry or die during said term that all rights which she may have under this judgment shall cease. * * *'

"Thereafter, on January 3, 1935, plaintiff asked a citation against T. B. Frensley stating that he had failed to pay to her certain sums due to her under the judgment of February 27, 1930, it being undenied by either party that said sums had arisen from the sale of certain real estate held by the said T. B. Frensley as trustees, and the court on the 31st day of January, 1935, found that the plaintiff was entitled to the sum of $420.83 from the said T. B. Frensley.

"The defendants now attack the judgment of February 27, 1930, as being void:

"First. Because it was a judgment for alimony, void upon its face for the reason that the amount payable thereunder is indefinite and uncertain. It is here unnecessary to discuss this proposition further for the reason that it is hereinafter held that the agreement upon which the said judgment was entered amounted to an assignment of the benefits of the trust by the said Cecil Frensley.

"Second. They further attack the said judgment for the reason that it is void for the lack of jurisdiction of the trial court to enter the same, since there is no judgment against the defendant, Cecil Frensley, but merely one against the defendant, T. B. Frensley, stating that it amounts to the equivalent of a garnishment. This proposition will not be further discussed for the same reason as that set out in regard to the first proposition.

"Third. The defendants further attack said judgment upon the ground that it is violative of the trust provisions of the last will and testaments of B. F. Frensley, deceased, and we hold that the case turns upon that provision of the will creating the trust.

"The pertinent part of the will of B. F. Frensley, deceased is as follows:

" '* * * The whole net income or earnings accruing from said property after all taxes and necessary charges have been paid to be paid over to my said children share and share alike during the period of this trust as often as once a month, if desired upon their separate order or receipt and without being subject in any manner to the order or intervention, or control of any husband or wife of any or either of them may have, or of any creditor of any or either of them, or of their husband or wife aforesaid. My object being to secure to each of my children for twenty (20) years the use and enjoyment of all the income from said property beyond and without the intervention or control of any husband or wife of any, or either of them, or any creditors of them.* * *

" 'I do hereby authorize and empower my said trustees above named, or any successors, in said trust to sell and dispose of any property, real or personal, that I may

have at the time of my death, except the business lots and buildings in Ardmore, Oklahoma, and to make good and valid instruments of transfer thereof of any part or any rights therein whenever in the judgment of said trustees any of said property is depreciating in value and to pay over t\ my said children share and share alike the proceeds of such sale.'

"It is the claim herein of the defendants that the will of the said B. F. Frensley, deceased, sets up a spendthrift trust. We are unable to agree with this contention. It is unnecessary to decide at this time whether the plaintiff herein could have enforced against the income or the corpus of the trust her claim for alimony in the absence of an assignment from the defendant, Cecil Frensley.

"This court in the case In re Trusteeship of Vance, 102 Okla. 129, 227 P. 881, held that the title to the income from a trust estate is in the beneficiary, and also held in the case of Flesner v. Cooper, 39 Okla. 133, 134 P. 379, that the beneficiary's interest in a resulting trust was an equitable estate which might be conveyed. The beneficiary of a trust may alienate or assign the income from a trust before it comes due, in the absence of statutory restrictions or restrictions in the instrument creating the trust (65 C. J. 551; Lamberton v. Pereles [Wis.] 58 N. W. 776); and we do not find it possible to read into the instrument a provision forbidding any such assignment, although such provision would be proper under section 11833, O. S. 1931.

"In regard to the right of a beneficiary to assign the income from a trust estate the leading case in the United States appears to be that of Nunn v. Titche-Goettinger Co. (Tex.) 245 S. W. 421, in which case the Supreme Court of Texas holds as follows:

"'According to the great weight of authority, however, where the instrument creating the trust contains no express words of restraint and nothing in its face declaring that the purpose thereof is to provide a support for the beneficiary and to furnish him with the comforts of life, and where it requires that the revenue arising from such trust shall be paid directly to the beneficiary without any direction concerning its application and without any discretion being vested in the trustee as to the time or amount of such payments or the purpose to which they shall be applied, such revenue may be anticipated, or assigned by the beneficiary or by proper proceedings subjected to the payment of his debts. Kingman v. Winchell (Mo.) 20 S. W. 296; Sherman v. Havens, 94 Kan. 654, 146 P. 1030,

Ann. Cas. 1917B, 394; Martin v. Davis, 82 Ind. 38; Caldwell v. Boyd, 109 Ind. 447, 9 N. E. 912; Forbes v. Lothrop, 137 Mass. 523; Baker v. Keiser, 75 Md. 332, 23 Atl. 735; Farmers' & Mechanics' Savings Bank v. Brewer, 27 Conn. 600; Pickens v. Dorris, 20 Mo. App. 1; Maynard v. Cleaves, 149 Mass. 307, 21 N. E. 376; Wenzel v. Powder, 100 Md. 36, 59 Atl. 194, 108 Am. St. Rep. 380; Sears v. Choate, 146 Mass. 395, 15 N. E. 786, 4 Am. St. Rep. 320; O'Hare v. Johnston, 273 Ill. 458, 113 N. E. 127; Dieke v. Dieke, 182 Ill. App. 13; Huntington v. Jones, 72 Conn. 45, 43 Atl. 564; Girard Life Ins. & Trust Co. v. Chambers, 46 Pa. 485, 86 Am. Dec. 513. * * *

"'The restraints imposed by a spendthrift trust greatly hamper the beneficiary in the free use and enjoyment of the income therefrom and are necessarily humiliating to such beneficiary. A trust should not be construed to belong to that class unless it appears reasonably clear that such was the purpose of the donor or testator. 26 Am. & Eng. Ency. Law (2d Ed.) pp. 141, 142; Dieke v. Dieke, 182 Ill. App. 13, 17; 25 R. C. L. p. 357, sec. 8.'

"There can be no other conclusion but that the agreement as entered into and as approved by the trial court in this case was an assignment of an undivided one-half interest in and to the interest of Cecil Frensley in the trust, and there can be no question under the record in this cause but that the trustee, T. B. Frensley, had full notice of such an assignment.

"The further question is raised by the defendants herein that the judgment of February 27, 1930, could in no event include the proceeds of the sale of nonproductive lands belonging to the estate of B. F. Frensley, deceased, the sale of which was discretionary and optional with the trustee thereof. Whether the plaintiff would be entitled to proceeds of such a sale depends upon the construction of that judgment. The terms and provisions of the judgment are not of such ambiguity as to properly require oral testimony to construe the same, and therefore the trial court properly sustained objections to proffered testimony as to the meaning of the term 'one-half of all sums of money to which the defendant may be entitled under said will.' This phrase can mean only one thing and that is that the plaintiff shall be entitled to an undivided one-half interest in the defendant's, Cecil Frensley's, interest in payments made by the trustee from whatsoever source."

The above quoted opinion was prepared by Harry Campbell, Jr., and concurred in by Floyd L. Rheam and Paul Avis, special masters, which opinion affirmed the judgment of the district court of Carter county.