Jean Ann MURPHY, Plaintiff in Error,

v.

Robert·Lee MURPHY, Defendant in Error.

No. 36188.

Supreme Court of Oklahoma.

Sept. 21, 1954.

Remington Rogers, Tulsa, for plaintiff in error.

Charles W. Jennings, Lawton, for defendant in error.

CORN, Justice.

On December 2, 1952 plaintiff, Robert L. Murphy, filed suit for divorce. The petition alleged the usual jurisdictional matters, facts of the marriage and the birth of two daughters, age 6 and 2½ years when the action was filed. As grounds for divorce plaintiff alleged that since January 15, 1951, the defendant had been guilty of extreme cruelty, and caused plaintiff mental anguish, by constantly objecting to his occupation as an officer in the United States Army, displaying a general attitude of indifference toward the marriage and preferring to make her home separate and apart from plaintiff, all without provocation on his part. There were further allegations relative to the parties' financial status. Plaintiff sought a decree of divorce for defendant's fault, custody of the children to be granted defendant with plaintiff having right of visitation, an equitable property division and proper order to provide child support for his daughters.

Defendant's motion for temporary support money and allowance of costs of litigation and travel expense to defend this action also denied generally plaintiff's allegations, or that he had grounds for divorce or legal separation. The trial court entered an order for $300 per month temporary support money, $250 attorney's fees, and permitted defendant to expend necessary sums for travel and expenses of litigation out of certain funds under her control.

Thereafter defendant filed her answer denying generally that plaintiff had grounds for divorce or separation. By cross-petition she alleged the facts of the marriage and specifically denied the charge of extreme cruelty by fault finding with his occupation, as well as all allegations relative to her alleged conduct, failure of the marriage and reasons therefor. She then charged plaintiff with gross neglect of duty and extreme cruelty by reason of his remarks and attitude, and for having filed an unfounded divorce action; that she had urged plaintiff to return home and accept satisfactory employment, which he refused to do. Defendant asked a property settlement, custody of the children and an order for separate maintenance.

The record discloses the following facts relative to the background, marriage and family relationship of these parties. These parties are of a religious persuasion which strenuously opposes divorce. Prior to their marriage plaintiff resided in a suburb of Boston, Massachusetts, while defendant resided in the neighboring city of Scituate. Their families were friends and these par-

ties had known one another for about five years prior to their marriage. Plaintiff entered the army in April, 1942, as a private. Prior to that time he was a student and had no vocation or occupation other than for summer employment. After training, plaintiff was commissioned as an officer and these parties were married June 12, 1943. Plaintiff was sent overseas and spent 15 months in combat as an infantry officer. He returned to this country in September, 1945, and was separated from the service in October, 1946. Defendant objected to his staying in the service and he returned to civilian life without a job, but later secured employment with a Boston bank at a salary of $32.50 per week. During this time the parties lived with defendant's parents. Over defendant's objections plaintiff re-enlisted in the army in 1948 as a sergeant. At that time he had been raised to $50 per week by the bank. This enlistment was for 3 years, but the following September he was recalled to active duty. In July, 1949, plaintiff once again was separated from the service, and he testified the basis for his release was his wife's objections to his military service, coupled with an opportunity for employment at a salary comparable to that received from the army. After his re-entering the service in 1948, defendant frequently voiced her objections to plaintiff's being in the army. Upon retiring from the army to accept civilian employment with an insurance company the plaintiff joined the active reserve and on January 13, 1951, was again recalled to active duty, and this status had continued up to the time the present action was filed.

The evidence shows that from January 15, 1951, until the date of this trial, plaintiff was stationed first at Fort Sam Houston, Texas, and later at Fort Sill, Oklahoma, while defendant and the children continued to live in the parties' home in Massachusetts which they had purchased in September, 1949. During this period the parties lived together at Fort Sam Houston from April until August, 1951. Plaintiff visited his family at Christmas in 1951, and in February, 1952, returned to his family on a short emergency leave, granted by reason of the serious illness of the oldest daughter. The following September defendant, together with plaintiff's mother, visited plaintiff at Fort Sill, Oklahoma.

Plaintiff's evidence may be summarized by stating that, following his return from overseas service, defendant continually objected to and found fault with his being in the army; and this general course of fault finding over the entire period of time, including the periods when he returned to civilian life, was such as to destroy the legitimate aims of marriage and preclude any possibility of reconciliation. Over a long period plaintiff had been attempting to decide whether to remain in the army or attempt another return to civilian life. When defendant, and plaintiff's mother, visited plaintiff at Fort Sill in September, 1952, he indicated his intention of staying in the service and advised defendant she should agree to the circumstance attendant upon such decision, or take steps to secure a divorce. There was some corroborative evidence by an officer friend relative to plaintiff's general ability, reputation and fitness. This witness testified to having read part of a letter written by defendant wherein she insisted that plaintiff leave the army and return to Massachusetts, and that plaintiff was very depressed and definitely disturbed at the time.

Defendant's evidence reflected in detail the parties lives following their marriage. During the time plaintiff was overseas defendant lived with her parents and worked, saving the allotment money ($200 per month) from his army pay. Upon his return they lived with her parents until purchase of the home in 1949. Her testimony detailed the various stations to which plaintiff was sent, their life together during the periods he returned to civilian life, and the circumstances upon which their separations were based during his army service. She denied having objected to his occupation and expressed her entire willingness to make a home with plaintiff. Defendant did admit having repeatedly urged plaintiff to return to the family home and establish himself in civilian life, but denied that she complained of his being in the army.

During the trial defendant introduced in evidence several letters written to her by

plaintiff during 1952. The most casual examination of this evidence reveals that the problem of whether plaintiff should remain in the army or return to civilian life was an ever present question between these parties. The obvious tenor of these letters, introduced by defendant, sufficiently establishes that plaintiff was attempting to settle in his own mind what was best for their future, and that this was a matter of continued discussion by correspondence. It likewise is evident that defendant had complained over the family situation and urged plaintiff to return to his family as a civilian. It is apparent also that plaintiff was disturbed mentally over the decision to be made and that defendant's communications offered little assistance in this respect, and evidently repeatedly called attention to the lack of family life by reason of plaintiff being in the army.

After the trial was concluded the court took this matter under advisement for a time and thereafter rendered judgment granting plaintiff a divorce and denying defendant the relief sought under her cross-petition. By the terms of the decree defendant was granted custody of the children, with the right of visitation given plaintiff, who was required to pay $200 per month child support, and additional attorney's fees. The court also decreed a division of all the property, awarding defendant in full satisfaction of alimony and property rights an automobile, a life insurance policy, all stocks, bonds, savings and bank accounts in Massachusetts, and the family home together with all furnishings. This portion of the decree further provided:

"* * * the plaintiff, upon demand of the defendant, make and execute to the defendant a good and sufficient deed to the hereinbefore described real estate, and upon his failure to do so, this decree shall operate as such transfer."

On appeal defendant presents three propositions in seeking reversal of this judgment and vacation of the divorce decree. Defendant first contends, and argues at great length, that the evidence is insufficient to sustain any finding of extreme cruelty which would entitle plaintiff to a decree of divorce. Under this proposition defendant seeks to show: (a) lack of evidence to support finding defendant was guilty of extreme cruelty; (b) objections to plaintiff's military career did not constitute actionable cruelty; (c) lack of evidence to show failure of the marriage, or that the parties cannot be reconciled. The length of defendant's analysis of the evidence precludes recitation of all the matters suggested therein. It is suggested that plaintiff's evidence revealed no cruelty "in person" in their correspondence, or during the varying periods these parties were together from April, 1951, when they were at Fort Sam Houston, until the last meeting at Fort Sill in September, 1952.

In support of her argument defendant cites and relies upon numerous cases dealing with the question of what constitutes extreme mental cruelty. See particularly Hornor v. Hornor, 151 Okl. 292, 3 P.2d 670; Peterson v. Peterson, 206 Okl. 68, 240 P.2d 1075; Vincent v. Vincent, 208 Okl. 470, 257 P.2d 512. Upon the basis of our decisions and defendant's analysis of the evidence herein as measured by the rules announced in our decisions, defendant asserts the absolute lack of grounds to support the decree of divorce entered herein.

We are of the opinion that the question is not to be confined to the narrow limits sought to be laid down by defendant under her analysis of the evidence. A tedious analysis and comparison of a great number of our prior decisions is made for the apparent purpose of attempting to demonstrate the absence of cruelty on defendant's part, under her interpretation of the evidence. It is unnecessary to attempt to distinguish the cited cases or further extend this discussion. The argument overlooks the bases of the statute and construction thereof noted in the syllabus hereafter quoted. The essence of our statutory provision, 12 O.S.1951 § 1271, has been expressed in a number of cases, wherein we have considered the question of what course or type of conduct will support a divorce decree granted upon the ground of extreme

mental cruelty. Syllabus 1 in Collins v. Collins, 182 Okl. 246, 77 P.2d 74, states as follows:

"There may be a divorce on the ground of 'extreme cruelty' in the absence of physical violence when there is conduct or treatment which destroys the concord, harmony, happiness, and affection of the parties, and the legitimate aims, objects, purposes, and end of matrimony, or grievously wounds the mental feelings, or so destroys the peace of mind as seriously to impair the health or endanger the life of the other."

To the same effect see also: Hornor v. Hornor, supra; Routh v. Routh, 191 Okl. 419, 130 P.2d 1000; Bell v. Bell, 196 Okl. 130, 163 P.2d 548.

A brief characterization of the parties' position herein is simply that each takes the position of being entitled to a favorable construction of the evidence in support of their respective positions. Plaintiff urges defendant's fault finding and expressed unwillingness to join him in an army career was sufficient to impair his peace of mind and destroy the legitimate aims of marriage. The defendant asserts that she found no fault with plaintiff, but merely urged his return to civilian life as a wife's privilege in counseling her husband as she had the right to do, and that this was neither cruelty nor destructive of the aims of matrimony. We do think it noteworthy that defendant, while denying in toto plaintiff's evidence and asserting her willingness to make a home with plaintiff, and while denying the need or desire for absolute divorce, was willing to continue her home life separate and apart from plaintiff under a decree granting separate maintenance.

An effort to give proper consideration to defendant's argument has unduly extended this discussion. Nothing could be truer than the statement that things do not happen in this world, they simply are brought about. This record is repetitive of the unhappy story so often retold as a part of the aftermath of two recent wars. A young man without previous training or experience other than in a modern army is forced to return and attempt adjustment in a civilian life of which he never has been a part. The wife who married him at the beginning of an army career now has become unimpressed with his willingness to fight his country's battles and wishes only to see him firmly settled as a civilian, most preferably in a locale which always has represented home to her but which now is unacceptable to the husband, particularly since he wishes to continue the only career he has known and for which he feels himself fitted. Out of this situation and upon the evidence presented in regard thereto, we hold that the judgment of the trial court is not against the clear weight of the evidence.

■ The second contention is that the court erred in decreeing that the property decreed to defendant should be in satisfaction of alimony and property rights. The decree entered awarded defendant the home, for which the parties paid $10,000, furnishings, an automobile, insurance policy upon plaintiff's life ($10,000), and the parties' stocks, bonds, bank and savings accounts. Plaintiff was left with an automobile, his life insurance and an additional life insurance policy for $5,000. Defendant admits practically everything was awarded to her and makes no claim that the court's award was inequitable. However, defendant argues the effect of this portion of the decree was to relieve plaintiff of all obligations and duty to support his wife over her remaining years, and that thus the trial court abused his discretion in the matter. No authority is cited in support of such argument. The fixing of the alimony to be allowed in a divorce case is peculiarly within the trial court's discretion. In determining the amount to be allowed consideration is to be given to the conduct of the parties, and the wife's condition and means, as well as the husband's estate and his ability to pay alimony. See Smyth v. Smyth, 198 Okl. 478, 179 P.2d 920, and cases therein cited. By the provisions of the divorce decree the defendant, although the divorce was granted for her fault, was awarded practically all of the property, and plaintiff was required to pay a substantial amount monthly as child support. Under the circumstances it is

impossible to say that the trial court abused his discretion in this matter.

 Defendant further contends the trial court erred decreeing that:

" * * * and that the plaintiff, upon demand of the defendant, make and execute to the defendant a good and sufficient deed to the hereinbefore described real estate, and upon his failure to so do, this decree shall operate as such transfer."

Although the parties agree plaintiff is willing to execute the required conveyance, the defendant insists such provision makes it impossible to enforce the terms of the divorce decree, in the event plaintiff refuses to comply therewith. Thus, since this provision is an essential part of the judgment, same should be vacated and a proper decree entered denying plaintiff a divorce. This argument is without merit. The rule is that a decree which grants divorce and fixes an award of alimony is invalid for indefiniteness as to the amount, the decree is valid as to the divorce, but void as to the alimony. Flaxman v. Flaxman, 169 Okl. 65, 35 P.2d 950. No reason is advanced as to why a divorce decree, valid in all other respects, should be set aside in its entirety for the trial court's error in attempting to enforce a portion thereof by entering a judgment beyond the court's jurisdiction.

 We adhere to the rule that in a case of equitable cognizance where a judgment has been rendered which is contrary to applicable law, this court will render, or cause to be rendered, the judgment which should have been rendered in the trial court. Taylor v. Willibey, Sheriff, 202 Okl. 254, 212 P.2d 453. The trial court awarded defendant alimony by setting over to her both real and personal property, and attempted to provide 'for enforcement of the decree as concerned the real property by incorporating therein a provision which was void for lack of jurisdiction. But, this does not invalidate the entire divorce decree. This court has the power to hear and determine the question. See particularly Dresser v. Dresser, 164 Okl. 94, 22 P.2d 1012. It would seem equally as true that the apparent error in the decree relative to the alimony and property settlement may be corrected upon appeal. For this reason we shall cause to be rendered the judgment which should have been rendered.

That alternative portion of the trial court's decree purporting to operate as a transfer of title to real property in another state is vacated and set aside. The judgment is in all other respects affirmed upon the condition that before this mandate is spread of record plaintiff shall execute a good and sufficient deed to the real property herein involved, otherwise this judgment shall be set aside and a new trial granted.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON, WILLIAMS and BLACKBIRD, JJ., concur.