RICHARD T. DANIEL, JR., AND AENA M. DANIEL, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3508–68.   Filed June 29, 1971.

*James K. Rushing* and *Cecil A. Ray, Jr.*, for the petitioners.
*Kenneth A. Little*, for the respondent.

STERRETT, *Judge:* Respondent determined deficiencies in the income
tax of petitioners as follows:

| Year | Deficiency |
| --- | --- |
| 1962 | $3, 299. 05 |
| 1963 | 3, 803. 30 |
| 1964 | 3, 456. 63 |

We are asked to decide whether alimony payments, which were
made out of petitioner Richard T. Daniel's income interest in a testa-
mentary trust created by his father, are excludable from petitioner's
gross income, or includable in his income with a corresponding deduc-
tion for these payments under section 215.[1]

### FINDINGS OF FACT

All of the facts were stipulated and are so found.

Richard T. Daniel, Jr. (hereinafter referred to as the petitioner),
and Aena M. Daniel are husband and wife whose legal residence was
Kerrville, Tex., at the time their petition was filed in this action.

On September 12, 1941, petitioner and Mary Dean Daniel (herein-
after referred to as Mary Dean) were married in San Antonio, Tex.
On April 16, 1957, petitioner instituted an action for divorce against
Mary Dean in the State of Texas. Mary Dean was served with process
in Oklahoma City, Okla., but made no appearance in the Texas pro-
ceeding. Accordingly, on June 24, 1957, the Texas court entered judg-

---

[1] All references by section are to the Internal Revenue Code of 1954 unless otherwise
indicated.

ment against Mary Dean, granting petitioner the relief requested. The Texas decree provided in part, as follows:

It is, therefore, ORDERED, ADJUDGED, and DECREED by the Court as follows:

1. That the bonds of matrimony heretofore existing between the plaintiff R. T. Daniel, Jr. and the defendant Mary Dean Daniel be and the same are hereby dissolved and that the said R. T. Daniel, Jr. be granted, and he is hereby granted, an absolute divorce from the defendant Mary Dean Daniel.

2. That said parties did not acquire and do not own any community property, and that all property, real, personal or mixed, owned by the plaintiff in this state and/or in all other states of the United States is his separate property and estate and that defendant is entitled to no part thereof.

At this time, petitioner resided in Texas, while Mary Dean lived in Oklahoma. Petitioner was one of four beneficiaries of a testamentary trust created by his father, who died on April 18, 1949. The situs of this trust was located in Tulsa County, Okla. Under the terms of the trust, petitioner was to receive one-fourth of the net income produced by this trust for a period of 20 years, after which time the corpus was to be distributed to petitioner's brothers, Samuel P. and William H. Daniel. Samuel and William were also named as trustees.

At some time prior to May 16, 1957, petitioner had assigned 65 percent of his one-fourth interest in the income of the trust to other persons, and accordingly, he retained an interest of only 8.75 percent in the net income produced by this trust. In addition, his remaining interest was subject to a lien held by the First National Bank of Dallas as security for a loan made to petitioner on July 28, 1951. The trustees were required to pay the bank $370 per month in satisfaction of that obligation.

On May 16, 1957, prior to the entry of final judgment in the Texas proceeding, Mary Dean filed a petition with the District Court of Oklahoma against "R. T. Daniel, Jr.; Samuel P. Daniel, and William H. Daniel, Trustees of the Trust Estate of R. T. Daniel, Sr." in which petition Mary Dean prayed for temporary support and maintenance, a decree of separate maintenance, alimony, and a restraining order against the trustees aforementioned prohibiting them from disbursing any moneys to the petitioner and directing them instead to pay temporary alimony to her in the amount of $750 per month.

The relief requested by Mary Dean was granted ex parte with temporary maintenance and support set at $750 per month to commence May 31, 1957, and on June 11, 1957, this order was affirmed pending a trial on the merits of Mary Dean's suit. Both the trustees and R. T. Daniel, Jr., filed answers in the above matter. R. T. Daniel, Jr.'s answer alleged, in part as follows:

1. The court is without jurisdiction of the property of this defendant.

\*          \*          \*          \*          \*          \*          \*

9. The petition states no cause of action against this defendant.

Should the court continue to assert jurisdiction, this defendant alleges that he is wholly without funds or property and that it is inequitable and unjust, even if the court had jurisdiction, by reason of circumstances which will be put in proof and by reason of the nature of the property involved, that the plaintiff is allowed the sum now contained in the order of the court, which order this defendant still maintains is without jurisdiction; and the defendant pleads the inequity of the order as an additional reason, while even if the court had jurisdiction, the order should not continue to exist providing for $750 a month during the pendency of this action.

On May 22, 1958, after a full hearing was held on the merits of Mary Dean's suit, a Journal Entry of Judgment was entered against petitioner and his codefendants. The order of the District Court provided that:

(a) The trust of R. T. Daniel, Sr. had its situs in Oklahoma.

(b) R. T. Daniel, Jr. owned an interest of 8.75 percent in the income produced by the aforementioned trust.

(c) R. T. Daniel, Jr. was duly and properly served by publication as provided by Oklahoma law.

(d) R. T. Daniel, Jr. obtained a divorce from Mary Dean on June 24, 1957, in a lawful Texas proceeding, but that proceeding in no way affected Mary Dean's property or alimony rights relating to that marriage.

(e). The First National Bank in Dallas had a first lien on R. T. Daniel, Jr.'s interest and Mary Dean's rights are secondary thereto.

(f) The award is a judgment in rem and is specifically not a personal judgment against the defendant R. T. Daniel, Jr., and

(g) Both the alimony and judgment and attorney's fees are judgments in rem and a lien should be impressed upon the interest of the said R. T. Daniel, Jr., in the trust estate of R. T. Daniel, Sr., secondary only to the lien in favor of the First National Bank in Dallas.

The District Court then provided:

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the plaintiff, Mary Dean Daniel, should be and is hereby awarded the sum of Seventy-Two Thousand Dollars ($72,000) as alimony, said $72,000 judgment being in rem to be paid out of the interest of R. T. Danield, Jr. in the trust estate of R. T. Daniel, Sr. at the rate of $750.00 per month until paid, beginning June 10, 1958, and each month thereafter, and the defendants, Samuel P. Daniel and William H. Daniel, trustees of the trust estate of R. T. Daniel, Sr., are hereby ordered to make said payments to the Clerk of this Court or such address as the plaintiff shall direct.

The trustee and R. T. Daniel, Jr., appealed the District Court's decision to the Supreme Court of Oklahoma. On November 17, 1959, the decision of the lower court was affirmed on the ground that (1) the petitioner, by virtue of the averments in his answer enumerated, *supra*, had in fact entered a personal appearance, and thereby waived any objection to jurisdiction, and (2) the Texas proceeding did not prohibit Oklahoma from entertaining an alimony action since the Texas court, not having had personal jurisdiction over the defendant, could not purport to adjudicate right to those personal rights of a financial nature arising out of a marital relationship. A motion for rehearing was denied December 22, 1959.

From May 1957 to June 1960, Mary Dean received temporary alimony and support in the total amount of $21,900. From June 1960 to February 1969, she received payments totaling $72,000. No part of these payments was for the support of any child of the petitioner. In regard to the final alimony award, payments of $750 per month were made to Mary Dean and her assigns from June 1960 through April 1961. From May 1961 through February 1969, payments were reduced to $680 due to the decreased availability of income from the trust for her.[2]

For the calendar years in question, the trustees paid Mary Dean and her assigns $680 per month, or $8,160 per year. This trust terminated on April 18, 1969, at which time the trustees received the corpus of the trust without restriction.

### OPINION

We are asked to consider whether respondent correctly disallowed a deduction for alimony payments made to Mary Dean by petitioners, and, alternatively, whether the trust income from which payments were made is properly includable in petitioners' gross income for the years in question. Both questions must be answered in the affirmative. Before setting forth the basis for our result, we think it helpful to review briefly the law of Oklahoma as it existed at the time of the Oklahoma proceedings and insofar as it might be relevant to the resolution of this case.

In Oklahoma, alimony is awarded to a wife in recognition of the husband's duty to provide for his wife's support. This duty continues after divorce, and Oklahoma courts, by allowing alimony, compel its performance. *Tobin* v. *Tobin*, 89 Okla. 12, 213 P. 884 (1923); *Hill* v. *Hill*, 197 Okla. 697, 174 P.2d 232 (1946). Permanent alimony must be awarded either in specific property or in a definite sum of money. *Bishop* v. *Bishop*, 194 Okla. 209, 148 P.2d 472 (1944). In determining the amount to be awarded, a court is required to consider all circumstances existing at the time of the award, including the conduct of the parties, the wife's condition and means, the husband's estate and his future earning capacity. *Seelig* v. *Seelig*, 460 P.2d 433 (Okla. 1969); *Murphy* v. *Murphy*, 276 P.2d 920 (Okla. 1954); *Canada* v. *Canada*, 190 Okla. 203, 121 P.2d 989 (1942).

Once final judgment has been entered, no modification of that judgment can be had by either party due to subsequent changes in circumstances. *Bowen* v. *Bowen*, 182 Okla. 114, 76 P.2d 900 (1938).

---

[2] Assuming payments were made as stipulated, the total alimony award paid by the trustees is $72,170, not $72,000. The parties do not explain this discrepancy in figures.

Finally, Oklahoma courts are permitted to entertain a wife's action for alimony provided the court has jurisdiction over both defendants, this proposition being true even if the parties are legally divorced under a decree of another State, so long as the wife did not personally appear in the divorce proceeding. *Vanderbilt* v. *Vanderbilt*, 354 U.S. 416 (1957) ; *Daniel* v. *Daniel*, 348 P.2d 185 (Okla. 1959).

Petitioners first contend that the Oklahoma proceeding irrevocably assigned a substantial interest in the trust income to Mary Dean, and the principles enunciated in *Blair* v. *Commissioner*, 300 U.S. 5 (1937), and *Harrison* v. *Schaffner*, 312 U.S. 579 (1941), operate to exclude the amount of these payments from petitioners' gross income. We do not think, however, that the Oklahoma proceeding resulted in a transfer of the "right, title, and estate in and to the property" from petitioner to Mary Dean. See *Blair* v. *Commissioner*, *supra* at 13–14. Rather, an alimony award of $72,000 was granted to Mary Dean and in order to satisfy that award, the District Court impressed a lien on petitioner's interest in the trust. We cannot say that this lien conveyed or transferred any interest to Mary Dean, and the District Court's order contains no language favorable to petitioners' position. In the absence of any valid assignment, we need not consider whether the interest allegedly transferred was substantial enough to come within the province of *Blair* and its progeny.

The remainder of petitioners' arguments assert the applicability of section 71, section 215, and section 682(a) to the instant case, and a brief discussion of the history, purpose, and scope of these provisions is necessary in order to discuss petitioners' position herein.

Prior to 1942 there was no provision requiring the inclusion in income of alimony payments received by a former wife nor was there a provision allowing a deduction for said payments by the former husband.

In 1942, Congress enacted the predecessors of section 71 and section 682(a) in order to produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the existence and continuance of an obligation to pay alimony. *Tuckie G. Hesse*, 7 T.C. 700 (1946). Cf. H. Rept. No. 2333, 77th Cong., 2d Sess., 1942–2 C.B. 427; S. Rept. No. 1631, 77th Cong., 2d Sess., 1942–2 C.B. 568.

Where payments in the nature of alimony were made by a trust, Congress envisioned two distinctly different situations, one of which was to be governed by section 22(k), I.R.C. 1939 (now sec. 71), and the other to be treated under the provisions of section 171, I.R.C. 1939 (the predecessor of sec. 682).

Insofar as is relevant for the moment, section 71 applies to "periodic payments * * * received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree * * * incident to such divorce." Sec. 71(a) (1).

Section 682(a) provides that where a wife who is divorced or separated from her husband receives payments from a trust created prior to divorce or separation, and under other provisions in the Code, the amount of these payments would normally be included in the husband's income, then, notwithstanding any other income tax provisions in the Code, these payments are included in the wife's gross income and excluded from the gross income of her husband.

The Senate Finance Committee stated the distinction thusly:

The full amount of periodic payments received under the circumstances described in [section 71] is required to be included in the gross income of the recipient whether such amounts are derived, in whole or in part, from income received or accrued by the source to which such payments are attributable. *Thus, it matters not that such payments are attributable to property in trust * * ** [Emphasis added.]

      *        *        *        *        *        *        *

Supplement E is amended by adding a new section [section 682]. [Section 682(a)] states the rule applicable to trust income after a decree of divorce or of separate maintenance in the case of trusts created prior to the divorce or separation and to which the provisions of [section 71] are not applicable. [S. Rept. No. 1631, 77th Cong., 2d Sess., 1942-2 C.B. 568, 569.]

Thus, section 682(a) applies when section 71 is inapplicable and the trust making the payments was created prior to the divorce. Sec. 1.682(c)-1(a)(2), Income Tax Regs.

Against this background, petitioners argue that section 682(a) is applicable because (1) the trust was created prior to the divorce decree, and (2) the *payments* by the trust were not made in discharge of any obligation (incurred or imposed upon petitioner by court order) to support Mary Dean. In explanation of the latter assertion petitioners note that under Okla. Stat. tit. 12, sec. 1278 (1910), the District Court of Oklahoma has the power to award Mary Dean alimony payable in either a specific amount of money or a specific property interest. Since the decree awarded her a specific property right (presumably an interest of $72,000 in trust income payable at $750 per month), petitioner argues that the order terminated his duty to support Mary Dean.

Petitioners point to the case of *Frensley* v. *Frensley*, 177 Okla. 221, 58 P.2d 307 (1936), as support for their assertion that Mary Dean was awarded a specific interest in property, as opposed to a specific sum of money payable out of a separate piece of property.

Petitioners' argument has an appealing, but somewhat erroneous, view of the legal effect of the Oklahoma proceeding. Much of what we stated above in regard to the applicability of *Blair* v. *Commissioner*, *supra*, is relevant here and need not be repeated. Furthermore, the *Frensley* case is distinguishable because the judgment in that case awarded the aggrieved spouse one-half of all the sums of money hereafter accruing to which the defendant (husband) may be entitled to under (the trust created by) the will of his deceased father. The award given to Mary Dean was of a sum certain payable out of trust income belonging to petitioner. The *Frensley* award in effect transferred the husband's right, title, and estate to one-half of the trust income from the husband to his spouse. Mary Dean's award did not.

We conclude that the discharge of petitioner's obligation to pay alimony was accomplished by the payments made by the trust using income attributable to the defendant, as beneficiary of the trust. Since the alimony payments operated to discharge a duty of support imposed upon petitioner by the Oklahoma courts, we feel section 71 is applicable, rendering section 682(a) inapplicable.

Notwithstanding this conclusion, however, petitioners next ask us to apply section 682(a) in disregard of the extensive legislative and regulatory sources aforementioned. They argue that the wording of section 682(a) requires its application to payment made by "any trust," and that the payments must be excluded from petitioner's income "despite any other provision of this subtitle." Sec. 682(a).

It has long been established that statutes must be read consistently with each other, and we think this is particularly true where two sections covering similar situations are enacted simultaneously. See *Mary A. Marsman*, 18 T.C. 1, 12 (1952). In asking us to ignore a clear expression of legislative intent, petitioners would have us ignore an interpretative source considered by the Supreme Court as the most persuasive evidence of statutory purpose. *United States* v. *American Trucking Associations, Inc.*, 310 U.S. 534 (1940). If we were to accept petitioners' interpretation of section 682(a), we would in effect be reading out the parenthetical clause "(or attributable to property transferred, in trust or otherwise * * *)" set forth in section 71(a)(1). We can find no justification for such an interpretation. Moreover, it would be an error in judgment for this Court to close its eyes to such clear expressions of congressional intent as accompanied the passage of these two sections in 1942. See S. Rept. No. 1631, 77th Cong., 2d Sess., 1942-2 C.B. 568-569. The apparent conflict produced by petitioners' suggested interpretation of section 682(a) is reason enough to resort to available interpretative aids for guidance, and these aids explicitly and unequivocally reject petitioners' interpretation.

Finally, petitioners argue that the facts fall within the scope of section 71(d)[3] or section 215,[4] since he asserts that the payments made to Mary Dean should be included in her income under section 71(a)(1). Section 71(a)(1) provides as follows:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

If the payments described under section 71(a)(1) are attributable to property transferred in trust, section 71(d) requires that the income with which these payments are made must be excluded from the husband's income. Alternatively, if the exclusion provided for in section 71(d) is not applicable, then section 215 allows a husband to deduct the amount of the payments made to his ex-wife.

Clearly, the payments operated to discharge petitioner's obligation to support his wife. Both parties agree that the Oklahoma District Court's order constitutes a written instrument incident to the Texas divorce. Thus, section 71(a)(1)'s applicability rests upon whether the payments were of a periodic nature.

The Oklahoma award provided for payment of $72,000 at a rate of $750 per month. Alimony awards which are expressed in terms of a specific sum of money are generally considered to be installment payments and not periodic payments. Sec. 71(c)(1). As such, they do not qualify for the special treatment afforded periodic payments under section 71 and section 215.

There are two exceptions to this rule, one statutory, and the other regulatory. Petitioners claim the benefit of both exceptions. Section 71(c)(2) provides that if installment payments are payable or may be paid over a period in excess of 10 years from the date of the decree ordering such payments, they are to be treated as periodic payments. If we measure this period from May 22, 1958, the date of the Dis-

---

[3] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
(d) RULE FOR HUSBAND IN CASE OF TRANSFERRED PROPERTY.—The husband's gross income does not include amounts received which, under subsection (a), are (1) includible in the gross income of the wife, and (2) attributable to transferred property.

[4] SEC. 215. ALIMONY, ETC., PAYMENTS.
(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

trict Court's decision, petitioners come within this exception. If the period is measured from the date of the Supreme Court of Oklahoma's decision (November 17, 1959), then petitioners' case falls outside section 71(c)(2). We think the latter measure is the proper one in this case.

In *Gordon L. Munderloh*, 48 T.C. 452 (1967), we held that State law determines the effective date of an instrument or judgment from which the 10-year period is to be measured. Under Oklahoma law, it appears that a judgment is not final until a party who has perfected an appeal has had the Supreme Court of Oklahoma act upon the lower court's judgment. *Methvin* v. *Methvin*, 191 Okla. 177, 127 P.2d 186 (1942). In the instant case, no payments for permanent alimony as set forth in the judgment were made until June 1960, although the District Court ordered payments to begin June 10, 1958. Prior to June 1960, Mary Dean received temporary alimony payments pursuant to the authority of the Oklahoma District Court. After the Supreme Court's decision, she did not receive any payments for permanent alimony dating back to June 10, 1958. Further, the amount of $72,000 awarded her was not reduced by any temporary alimony payments. This circumstance clearly shows that the District Court's order was not effective until the Supreme Court had decided the merits of petitioner's appeal. Since payments were required to be made (and were made) within 10 years of the Supreme Court's decision, we find section 71 (c)(2) inapplicable.

Secondly, petitioners argue that the payments were subject to the contingency of the trust corpus producing sufficient funds to meet the required monthly payments, and this contingency might have extended the period of time during which payments could be made over 10 years. Additionally, they argue that this contingency is sufficiently similar to a change in the economic status of either spouse (in this case, the husband). Therefore, petitioners reason that since respondent's regulations treat installments payments subject to the latter contingency as periodic payments, they too should receive the same treatment in regard to these payments. See sec. 1.71–1(d)(3), Income Tax Regs.

Petitioners have failed to take into account the finality of an alimony award under Oklahoma law. That the trust might not have been able to satisfy the judgment within 10 years is not relevant. What is relevant is that the judgment could not have been carried out in accordance with the terms of the decree, and it is the terms of the decree which govern herein. *Robert D. Stecker*, 31 T.C. 749 (1959). The trust's ability to pay $750 per month was unquestionably a factor con-

sidered by the Oklahoma courts at the time judgment was rendered. Oklahoma law forbids subsequent consideration of either the award or the monthly payments awarded thereunder. *Bowen* v. *Bowen*, *supra*. The failure of the trust to pay Mary Dean $750 per month after April of 1961 was in violation of the terms of the decree. Under *Robert D. Stecker*, *supra*, we can look only to the terms of the decree to determine whether payments may be made over a period of time in excess of 10 years. Since they cannot, section 71(c)(2) cannot operate to help petitioners' cause.

Finally, we think petitioners' analogy to respondent's regulations is in error. In the first place, the contingency talked about thereunder contemplates a change in the amount of the award, not a change in the amount of the monthly payments. *William D. Price, Jr.*, 49 T.C. 676, 682 (1968). Secondly, this contingency is present in all judgments for money, regardless of their nature. Any award of money, particularly those payable over a period of time in the future, are subject to the payor's ability to pay. Were we to adopt petitioners' argument, all installment payments of any alimony award would have to be considered periodic payments. This is not what Congress intended, nor is there any authority for this proposition either in the statute or regulations thereunder.

To reflect our findings, and concessions made by petitioners prior to trial,

*Decision will be entered under Rule 50.*