NOBLE R. PRICE and JANIE PRICE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Price v. Commissioner
Docket No. 9347-76.
United States Tax Court
T.C. Memo 1979-17; 1979 Tax Ct. Memo LEXIS 511; 38 T.C.M. (CCH) 53; T.C.M. (RIA) 79017; January 9, 1979, Filed *511 H sold stock and agreed to receive the sales proceeds in installments. After part of the proceeds were paid, the corporation whose stock was sold placed money sufficient to cover the unpaid balance of the sales price in an escrow account. H subsequently was divorced from W, who was granted a judgment against H, secured by a lien on the installment sale promissory note and the escrow account. The status of the escrow account and the disposition of payments of the sale proceeds were resolved by litigation among H, W, the stock purchasers, the escrow agent, and others. Held: under the terms of the divorce decree, the portion of the installment proceeds paid to W does not represent a nontaxable division of property, but is income to H. Heldfurther: under the terms of the divorce decree, the portion of the installment proceeds paid to W was not paid in exchange for release by her of her marital rights. account did not result in recognition of the entire Heldfurther: the establishment of the escrow remaining gain at the time of the establishment; the court decree resolving the status of the escrow account and the disposition of payments of the sale proceeds *512 did not result in recognition of the entire remaining gain at the time of the decree. Williard A. Herbert, for the *513 petitioners. John F. Dean, for the respondent. CHABOT
MEMORANDUM OPINION Chabot, Judge: * Respondent determined deficiencies in petitioners' income tax for the calendar years and in the amounts listed below: Year
Deficiency
1971
$ 34,121.86
1972
2,946.35
1973
283.76
After concession by petitioners of other issues, the single issue remaining [1] is whether petitioners' gross income for 1971 includes installment proceeds from the sale of property in 1968. *514 All of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. Noble R. Price (hereinafter sometimes referred to as "Ray") and Janie Price are husband and wife, and resided in Dallas, Texas, when they filed the petition in this case. On or about June 1, 1968, Ray sold stock in Pamper Music Co., Inc. (hereinafter referred to as "Pamper"), to Garland Hank Cochran and Willie Nelson (hereinafter referred to as "the stock purchasers") for a total sale price of $ 431,325. The total sale price was to be paid in installments with interest on a promissory note. $ 125,084.25 of the sale price was paid to Ray in 1968. Ray elected to report the sale of the Pamper stock as an installment sale in his 1968 income tax return. [2]
An additional $ 38,280.09 of the principal of the installment sale promissory note was paid in 1969, leaving an outstanding balance on the note, on account of the sale, of $ 267,960.66, as of July 23, 1969. Pamper agreed to deposit $ 304,000 in cash in an account at the Commerce Union Bank (hereinafter sometimes referred to *515 as "the Bank") for the purpose of making payments to Ray on the promissory note. A written escrow agreement was executed on June 2, 1969, between Pamper and the Bank, and the $ 304,000 was deposited with the Bank. Under the escrow agreement, the escrow agent was to pay Ray, on June 1, 1970 (and on June 1 of each succeeding year, until the $ 267,960.66 sum was paid in full), $ 38,280.09 plus interest at six percent per year; also the Bank was to pay Pamper interest at 6 1/4 percent per year for one or two years, and thereafter at the then prevailing rate. During all of 1968, Ray was married to Betty Barthine Price (hereinafter sometimes referred to as "Betty"). On July 23, 1969, Ray and Betty were divorced by decree of the Circuit Court of Sumner County, Tennessee. The divorce decree included the following provisions: It is further ORDERED and DECREED as alimony in solido to complainant [i.e., Betty] all the right, title and interest defendant [i.e., Ray] has in and to the homeplace of the parties * * *. Further complainant, Betty Barthine Price, is awarded a judgment against defendant, Noble Ray Price, in the amount of $ 133,980.33 [one-half of the outstanding balance *516 on the Pamper stock sale] and to secure the same a lien is impressed upon the note payable to defendant deposited with Jordon Stokes, III, Attorney, and also upon the trust fund deposited with Commerce Union Bank to secure payment of the note, and payments upon the aforesaid judgment will be paid in equal installment as the note payments are made the payment being one-half the yearly payment due upon the note in the amount of $ 38,280.09, and in addition one-half the accrued interest payments, and as this note resulted from the sale of Pamper Music Co., Inc. stock and Capital Gains taxes may have to be paid on said sale, the defendant will pay his portion of said tax, if any, and complainant will be liable for her portion of the said Capital Gains taxes, however, if it becomes necessary for defendant to report on his tax return, the entire sale of the stock, upon demand and proper documentation thereof complainant will refund to defendant one-half the Capital Gains taxes so paid. Further as alimony to complainant, defendant, Noble Ray Price, will pay to Earl McNabb and Jack Norman, Jr., Attorneys for complainant, an attorneys fee in the amount of $ 10,000.00, at no interest, payable *517 $ 2,500.00 per year for a period of four years on or before June 30th each year beginning in June, 1970, and to secure the same a lien is impressed upon the heretofore described note and trust fund. * * * It is further ORDERED and DECREED defendant, Noble Ray Price, will pay to complainant, Betty Barthine Price, as alimony and child support the sum of $ 1,250.00 per month for twenty five (25) consecutive months beginning August 21, 1969 and continuing on the same day of each succeeding month until fully paid the last of such payment being August 21, 1971, at which time the defendant will commence to pay complainant the sum of $ 400.00 on the 21st of each month as child support. The complainant will be responsible for the Federal Income Tax for the payments of $ 1,250.00 per month for 25 months. It is further ORDERED and DECREED * * *. In accordance with the agreement between the parties, complainant will sign the joint income tax report of the parties for the fiscal year 1968, and the defendant will hold complainant harmless from any and all tax liability that has or may result as to the 1968 Federal Tax return. Before the entry of the divorce decree, Ray sued the stock *518 purchasers with respect to the Pamper stock sale. In June 1970, Betty, the Bank, and certain others became parties to this suit. On June 11, 1970, the Chancery Court for Davidson County, Tennessee, ordered that (a) the promissory note for the sale of the Pamper stock was to be deposited with the clerk of the court, and (b) "as to future payments due Ray Price pursuant to the escrow agreement in question", the Bank was to remit, after certain expenses, one-half of "the amount due Ray Price to Betty Barthine Price." An action was brought for an interpretation of the portion of the divorce decree relating to the $ 133,980.33 judgment (set forth, supra). On November 1, 1971, the Supreme Court of Tennessee affirmed the decision of the Circuit Court for Sumner County that the judgment did not bear interest from the date of the divorce decree, but from the date each payment was due. Price v. Price, 225 Tenn. 539, 472 S.W.2d 732 (1971). In reaching this conclusion, the Tennessee Supreme Court analyzed the divorce decree as follows: We do not agree with appellant's [i.e., Betty's] construction of this language of the decree. First, under this decree appellant *519 has been awarded alimony in solido, a judgment against appellee [i.e., Ray] in the amount of $ 133,980.33. Secondly, for the purpose of securing the payment of this judgment, the court has impressed a lien upon a note owned by appellee and deposited with Jordan Stokes, III, and also a lien upon a trust fund in the Commerce Union Bank. Thirdly, the court has decreed this judgment be paid in equal installments, with the due date of the installments being set as the same date of the installments on the note deposited with Jordan Stokes, III. The court has decreed the amount of the installments be computed by taking one-half of the yearly installments of $ 38,280.09, due on the note deposited with Jordan Stokes, III, and add these to one-half of the accrued interest on the said note, which two figures combined would make up the full amount of an installment due on appellant's judgment. * * *
In the case at bar appellant was awarded a money judgment against appellee in the amount of $ 133,980.33, which judgment was entered and became final on July 23, 1969. On this date appellant became a creditor and the appellee a debtor, but what is fatal to appellant's claim *520 for interest beginning on this date is that on this date she was not entitled to the use of any of the money represented by this judgment. The judgment is payable in installments and appellant only became entitled to the use of any part of the money represented by this judgment on the date the first installment was due, and the parties agree such was paid in full on that date. [472 S.W.2d at 733, 734; emphasis supplied.] During 1970 and 1971 the remaining payments on the promissory note were made in several installments. Betty received the $ 133,980.33 plus accrued interest due to her under the divorce decree. Petitioners contend that the portion of the installment proceeds paid to Betty represents a nontaxable division of property. Respondent argues that the installment proceeds on the promissory note were Ray's property at the time they were paid, and that the payment of one-half of the proceeds to Betty was merely a payment of alimony (nondeductible by petitioner, see secs. 215(a) [3] and 71(c)). *521 Petitioners argue in the alternative that, if they are liable for income tax, then the taxable event was the exchange of property for marital rights in 1969, a taxable year not before the Court. Respondent contends that no division of property occurred in 1969, but merely the determination of a money judgment. Petitioners argue, as a second alternative, that the transfer to "an escrow fund which was fully court supervised and ordered" (ptrs' opening brief, p. 7), was sufficient to satisfy the installment obligations so that under section 453(d) the outstanding balance was income to them in 1970, also a taxable year not before the Court. On answering brief (pp. 5-6), petitioners assert that the establishment of the escrow account as collateral for the promissory note in 1969 constituted satisfaction of the obligation under section 453(d), giving rise to taxable income in 1969 and foreclosing an income tax deficiency for 1971. Respondent argues that the installment obligations were not satisfied by the payment of the outstanding balance to an escrow fund, but that that escrow fund was merely to serve as security on the note. We agree with respondent as to all of petitioners' *522 alternative positions. I. Effect of the Divorce Decree
The income which respondent seeks to tax to petitioners is based on the installment proceeds from the 1968 sale by Ray. Petitioners argue that the award to Betty by the divorce decree represents a property settlement and concludes that the receipt by Betty of one-half of the installment proceeds gives rise to no income tax consequences to petitioners. After examining the divorce decree, we conclude that the $ 133,980.33 award to Betty was an award of a money judgment with liens imposed on the installment sale promissory note and on the escrow fund. The decree gave Betty only a security interest in the note and the escrow fund and transferred no ownership to her. We read the opinion of the Supreme Court of Tennessee (set forth in pertinent part, supra) as requiring the foregoing interpretation of the divorce decree. Since the installment obligation continued to be owned by Ray, notwithstanding the decree that the proceeds be used to satisfy Betty's money judgment against Ray, the income from the payment of these proceeds is taxable to petitioners. [4]Lucas v. Earl, 281 U.S. 111 (1930). The Bank *523 was, in effect, Ray's agent for the payment of this money judgment to Betty and the fact that the 1970 Chancery Court decree directed the Bank to make the payments directly to Betty does not affect the inclusion of the amounts in petitioners' income. Old Colony Trust Co. v. Commissioner, 279 U.S. 716 (1929). The conclusion we reach with respect to petitioners' primary argument is in accord with the conclusion reached in Daniel v. Commissioner, 56 T.C. 655 (1971), affd. per curiam 461 F.2d 1265 (CA5 1972). In that case, an Oklahoma court had granted an ex-wife a money judgment against her ex-husband. The Oklahoma court had imposed a lien against the ex-husband's beneficial income interest in a trust, ordering the trustee to pay the income directly to the *524 ex-wife until the money judgment was satisfied. This Court held that the income from the trust, although paid by the trustees to the ex-wife, nonetheless was includible in the ex-husband's gross income. We stated: "We do not think * * * that the Oklahoma proceeding resulted in a transfer of the 'right, title, and estate in and to the property' from [the ex-husband] to [the ex-wife]. * * * Rather, an alimony award of $ 72,000 was granted to [the ex-wife] and in order to satisfy that award, the District Court impressed a lien on [the ex-husband's] interest in the trust. We cannot say that this lien conveyed or transferred any interest to [the ex-wife]." 56 T.C. at 659. Although Daniel involved payments from a trust, and the instant case involves payments from an escrow account with respect to a promissory note, [5] we see no reason to reach a result in this case contrary to that reached in Daniel. *525 Petitioners cite United States v. Patrick, 372 U.S. 53 (1963), as authority for the following: Respondent's reliance on the theory of anticipatory assignment of income is misplaced. The sum claimed by and awarded to Betty Barthine Price by the divorce decree arose out of the marital relationship and was thus the product of petitioner's family life. [Ptrs' reply brief, p. 5.] In Patrick, the Supreme Court held that certain payments made by an ex-husband to his attorneys and to his ex-wife's attorneys in connection with divorce proceedings were not deductible business expenses. We fail to see how this relates in any meaningful way to petitioners' arguments in the instant case. Petitioners cite Lambros v. Commissioner, 459 F.2d 69 (CA6 1972), affg. a Memorandum Opinion of this Court; [6] as authority for the proposition that the divorce decree directly provided for "a non-taxable division of property." Lambros merely held that a property settlement was not a "periodic payment" to which section 71 applied and, therefore, the payor of the property settlement was not allowed a deduction under section 215. Neither party in the instant *526 case contends that sections 71 and 215 are applicable to the payments here at issue. In contrast, the point at issue in the instant case is whether Betty had a property interest in the promissory note or the installment proceeds. This issue was not presented in Lambros. Lambros, consequently, is not relevant to this case. [7]
II. Exchange of Property for Marital Rights
Petitioners' first alternative argument, in full (ptrs' opening brief pp. 5-6), is as follows: Betty Barthine Price was awarded $ 133,980.33 by the divorce decree entered July 23, 1969. This was an award to her of alimony in solido in exchange for her marital rights. The award was fully guaranteed by an escrow deposit in the Commerce Union Bank. occurred immediately on the award of the property to Betty Barthine Price in exchange for her marital rights. [Citing United States v. Davis, 370 U.S. 65 (1962).] We *527 have concluded that the Tennessee courts gave Betty no property interest in the promissory note and no property interest in the proceeds of the installment sale of Pamper stock. Therefore, Davis does not affect the result on the facts before us. Cf. Swaim v. Commissioner, 50 T.C. 302 (1968), affd. 417 F.2d 353 (CA6 1969). Consequently, there was no sale or exchange in 1969 resulting from the divorce decree which would cause Ray to recognize gain in 1969, rather than 1971, on account of the sale of the Pamper stock. III. Application of Section 453
Petitioners appear to make the following contentions with respect to section 453: (1) the Davidson County Chancery Court decree triggered recognition in 1970 of the gain on the Pamper stock sale under section 453(d)(1). [8]
*528 (2) The escrow arrangement constituted payment of the balance due on the promissory note, resulting in recognition in 1969 of the gain on the Pamper stock sale. Recognition in 1970
It does not appear that any of the alternative predicates of section 453(d)(1) apply. The Chancery Court decree did not cause the installment obligation to be satisfied at other than its face value. Nor did this decree cause the installment obligation to be "distributed, transmitted, sold, or otherwise disposed of", since Ray remained the owner of the installment obligation and all the proceeds were either to go to Ray or to pay specified obligations of Ray. The decree did require that the promissory note be delivered "to the Clerk and Master of this Court" but the decree specified that that physical delivery was only for the purpose of assuring that certain payments would be credited on the promissory note; the decree did not suggest that the physical delivery effected a change in property rights in the note. We find no merit in petitioners' argument that the decree resulted in recognition of gain in 1970 under section 453(d). Petitioners cite Burrell Groves, Inc. v. Commissioner, 223 F.2d 526 (CA5 1955), *529 affirming 22 T.C. 1134 (1954), and Watson v. Commissioner, 69 T.C. 544 (1978) on appeal (CA5, April 3, 1978), as support for their argument that Ray's "liability, if any, accrued in 1970 under the provisions of section 453(d), I.R.C. of 1954." (Ptrs' opening brief, p. 7.) We do not find either case controlling in the instant situation. In Watson, this Court concluded that the banker's letter of credit involved therein, to be presented and paid 10 days after the close of Watson's taxable year there in issue, "was readily convertible to cash through an assignment of [Watson's] right to its proceeds. It was in every real sense equivalent to cash, and he could decide when and whether he would convert it to cash by assigning the proceeds." Petitioners have failed to convince us, on the record in this case, that Ray had any similar right, theoretically or practically, to convert the installment obligation to cash in 1970. In Watson, we compared the letter of credit to "an escrow account which the taxpayer controlled," (69 T.C. at 553) citing Williams v. United States, 219 F.2d 523, 527 (CA5 1955); *530 Oden v. Commissioner, 56 T.C. 569, 575 (1971); Pozzi v. Commissioner, 49 T.C. 119, 127 (1967). In Williams, the Court of Appeals held "that when the [purchaser's] bid was accepted, and it desired and offered to comply with it by paying the full purchase price, the taxpayers were then in constructive receipt of it, and that the self imposed limitation of the escrow device did not in fact and in law change the situation so as to make the funds any less available to, and constructively received by them." 219 F.2d at 527. Similarly, in Oden this Court concluded, on the basis of the record therein, that the buyers were willing to give the certificates of deposit to the taxpayer therein, but deposited them in an escrow account at the request of the sellers. We held there that the deposit of the certificates constituted payment and not merely security for an installment obligation. Finally, in Pozzi this Court found, on the basis of the record therein, that the buyer "was ready, willing, and able to make payment in full of the total sales price" on the date the property was transferred, that the sellers insisted on the money *531 instead being deposited in escrow and paid over a period, and that "the entire sales price * * * was available to and constructively received by [the sellers in the year of sale] since it was then within their power and control to have received the full sum for their business and assets." 49 T.C. at 125, 126. Petitioners have failed to convince us, on the record in this case, that Ray had similar constructive receipt of the remaining sale price in 1970.See Stiles v. Commissioner, 69 T.C. 558 (1978). Burrell Groves involved the substitution of a new debtor and installment notes with new terms and amounts for the existing debtor and installment notes. The decision that such a substitution constituted a disposition, under section 453(d), does not convince us that there was a disposition of Ray's installment obligations by virtue of the 1970 decree of the Davidson County Chancery Court. Recognition in 1969
Although the events surrounding the establishment of the escrow agreement in 1969 are not clearly set forth in this record, it is evident that uncertainties remained as between Ray, the stock purchasers, and others with respect to their *532 respective rights and obligations arising from the Pamper stock sale. The fact that Ray brought the proceeding that led to the 1970 court decree is a sufficient indication of the uncertainties still existing in 1969. The 1969 escrow agreement may have further assured Ray that he would, indeed, receive timely payment of the installment sale proceeds; however, we see nothing in the escrow agreement (taken together with Ray's almost-simultaneous institution of the suit that led to the 1970 court decree) that would justify a conclusion that the escrow agreement constituted satisfaction of the installment obligation. [9]
*533 In their answering brief (p. 5) petitioners point to Rev. Rul. 77-294, 1977-2 C.B. 173, revoking Rev. Rul. 68-246, 1968-1 C.B. 198, as a statement "that in an installment sale a substitution of an escrow deposit not subject to the unqualified demand of seller for a deed of trust and note as collateral, is payment of the balance due and the installment method does not apply to future payments." By its terms the 1977 ruling is inapplicable "to payments received from an escrow account where an escrow deposit was made in a year subsequent to the year of sale and on or before August 22, 1977, the date this Revenue Ruling is published in the Internal Revenue Bulletin." 1977-2 C.B. at 174. Since petitioners do not suggest that respondent abused his discretion under section 7805(b)[10] to make the ruling prospective only, it is unnecessary for us to consider whether the ruling is distinguishable or whether the ruling is correct. *534 Decision will be entered for the respondent.
Footnotes
*. By order dated April 4, 1978, the Chief Judge reassigned this case from Judge William A. Goffe to Judge Herbert L. Chabot↩ for disposition.
1. The deficiencies for 1972 and 1973 reflect adjustments made by respondent to petitioners' maximum tax computations in those years that take into account the tax-preference nature of respondent's determination as to the 1971 installment proceeds. Our resolution of the single remaining issue will simultaneously determine whether these maximum tax computation adjustments should be made for 1972 and 1973. Petitioners originally asserted that the notice of deficiency had not been timely mailed as to 1971 and 1972, but have conceded this issue.↩
2. See Price v. Commissioner,T.C. Memo. 1975-7↩.
3. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect during the taxable years in issue.↩
4. SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * *
(3) Gains derived from dealings in property; ***.↩
5. Also, the subjecting of the installment obligations to a lien that secured the judgment awarded by the divorce decree against Ray in favor of Betty did not constitute a sale or other disposition of the installment obligation under section 453(d). Town & Country Food Co. v. Commissioner, 51 T.C. 1049, 1056-1058 (1969); accord, United Surgical Steel Co. v. Commissioner, 54 T.C. 1215, 1227-31↩ (1970).
6. T.C. Memo. 1971-135↩.
7. Petitioners also cite Hulbert v. Commissioner, T.C. Memo. 1973-221, for the same proposition. Hulbert is not relevant to the instant case for the same reason that Lambros↩ is not relevant to the instant case.
8. SEC. 453. INSTALLMENT METHOD. * * *
(d) Gain or Loss on Disposition of Installment Obligations.-- (1) General rule.--If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and-- (A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or (B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.↩
9. Petitioners do not maintain that Pamper's involvement in the escrow agreement (in which Pamper apparently assumed the obligations of the stock purchasers) triggered recognition of the gain. The record stipulated to by the parties does not include any explanation of this apparent shift in obligors. Under the circumstances we do not believe it is appropriate to rest the judgment in this case on Pamper's role in the escrow agreement. Compare Cunningham v. Commissioner, 44 T.C. 103 (1965), with Burrell Groves v. Commissioner, supra↩.
10. SEC. 7805. RULES AND REGULATIONS. * * *
(b) Retroactivity of Regulations or Rulings.--The Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.↩